1  Ronald H. Bae (SBN 186826)
   rbae@AequitasLegalGroup.com
2  Olivia D. Scharrer (SBN 291470)
   oscharrer@AequitasLegalGroup.com
3  AEQUITAS LEGAL GROUP
   A Professional Law Corporation
4  1156 E. Green Street, Suite 200
   Pasadena, California 91106
5  Telephone:     (213) 674-6080
   Facsimile:     (213) 674-6081
6

7  Attorneys for Plaintiff KRISTI DEL TORO

8  (*Additional counsel on the following page*)

9

10              **UNITED STATES DISTRICT COURT**

11        **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

12

13 | KRISTI DEL TORO, individually, and on
14 | behalf of other members of the general public
   | similarly situated and other aggrieved
15 | employees,
16 |
   |                    Plaintiff,
17 |
   |        vs.
18 |
19 | CENTENE CORPORATION, a Delaware
   | corporation; ENVOLVE PHARMACY
20 | SOLUTIONS, INC., a Delaware corporation;
   | US SCRIPT LLC (dba US SCRIPT, INC.), a
21 | Delaware limited liability company; and
   | DOES 1 through 10, inclusive,
22 |
23 |                    Defendants.
24 |
25 |
26 |
27 |
28 |

**Case Number:   4:19-cv-05163-YGR**

[Honorable Yvonne Gonzalez Rogers]

**PLAINTIFF'S NOTICE OF UNOPPOSED
MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

**Hearing Date:**   **October 4, 2022**
**Time:**           **10:00 a.m.**
**Location:**       **Courtroom 1 – 4th Floor**

[Filed concurrently with the Declaration of
Ronald H. Bae; Declaration of Matthew
Righetti; Declaration of Reuben Nathan; and
Proposed Order]

[Complaint filed:   August 19, 2019]

*(sidebar, rotated)* **AEQUITAS LEGAL GROUP** A Professional Law Corporation 1156 E. Green Street, Suite 200 Pasadena, California 91106

1  Matthew Righetti, Esq. State Bar No. 121012
2  John Glugoski, Esq. State Bar No. 191551
   **RIGHETTI GLUGOSKI, P.C.**
3  456 Montgomery Street, Suite 1400
   San Francisco, CA 94101
4  Telephone: (415) 983-0900
   Facsimile: (415) 397-9005
5  Email: matt@righettilaw.com
   Email: jglugoski@righettilaw.com
6

7  Reuben D. Nathan, Esq. (SBN: 208436)
   rnathan@nathanlawpractice.com
8  **NATHAN & ASSOCIATES, APC**
9  2901 W. Coast Highway, Suite 200
   Newport Beach, California 92663
10 Telephone: (949) 270-2798
   Facsimile: (949) 209-0303
11

12 Attorneys for Plaintiff KRISTI DEL TORO

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on <u>October 4, 2022</u> at <u>10:00 a.m.</u> in <u>Courtroom 1</u> of the above-captioned court located at 1301 Clay Street, Oakland, CA 94612, Plaintiff KRISTI DEL TORO will, and hereby does, move for an order:

1. Granting preliminary approval of the proposed Joint Stipulation of Class Action Settlement;
2. Granting the filing of the proposed Second Amended Complaint;
3. Appointing Plaintiff as the Class Representative;
4. Appointing Plaintiff's counsel in both cases as Class Counsel;
5. Appointing ILYM Group, Inc. as the Settlement Administrator;
6. Approving the form of notice to the Class;
7. Setting the hearing date for Motion for Final Approval.

This motion is made on the ground that the settlement is fair, reasonable, and adequate because it is the product of arm's-length, good-faith negotiations after significant litigation, and given the relative strengths and weaknesses of the claims and defenses, as well as the risks involved in pursuing further litigation.  This motion will be based upon this Notice, the accompanying Memorandum of Points and Authorities, Declaration of Ronald H. Bae, Declaration of Matthew Righetti, Declaration of Reuben D. Nathan, as well as the pleadings and papers on file herein and upon any other matters that may be presented to the Court at the hearing.

Dated:  August 30, 2022                      Respectfully Submitted,

                                             AEQUITAS LEGAL GROUP
                                             RIGHETTI GLUGOSKI, P.C.
                                             NATHAN & ASSOCIATES, APC


                                                 /s/  *Ronald H. Bae*
                                             By: _____
                                                  RONALD H. BAE
                                                  OLIVIA D. SCHARRER
                                             Attorneys for Plaintiff KRISTI DEL TORO

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................ 1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................... 2

        A.      The Parties and Plaintiff's Allegations ......................................... 2

        B.      Relevant Procedural History ......................................................... 3

        C.      Discovery and Investigation .......................................................... 5

                1.      Pre-Filing Investigation ...................................................... 5

                2.      Written Discovery ............................................................... 5

                3.      Settlement Negotiations ....................................................... 7

III.    SUMMMARY OF SETTLEMENT TERMS ................................................ 8

        A.      The Proposed Settlement Class ...................................................... 8

        B.      Relief Provided by the Settlement Agreement .............................. 9

                1.      Settlement Allocation Formula .......................................... 10

                2.      No Reversion and No Claim Form Required ...................... 10

                3.      Distribution of Uncashed Settlement Checks .................... 10

                4.      Scope of the Release ......................................................... 10

        C.      Requested Attorneys' Fees and Costs and Proposed Service Payments to the

                Class Representative ................................................................... 11

        D.      Settlement Administration ........................................................... 12

IV.     ARGUMENT ........................................................................................... 12

        A.      The Settlement Class Should Be Provisionally Certified ............ 12

                1.      The Settlement Class Is Sufficiently Numerous ............... 13

                2.      There Are Common Issues of Law and Fact ..................... 13

                3.      Plaintiff's Claims Are Typical of the Settlement Class ..... 13

                4.      Plaintiff and Her Counsel Will Adequately Represent the Settlement

                        Class .................................................................................. 14

                5.      Common Issues Predominate Over Individualized Issues .......................... 15

                6.      A Class Action Is Superior to Individual Actions ............ 16

-iv-

7.    The Court Should Appoint Plaintiff as the Class Representative and Plaintiff's Counsel as Class Counsel ....................................................... 16

B.    The Settlement Should Be Preliminarily Approved ................................................. 17

1.    The Settlement Was Negotiated at Arm's Length by Experienced Counsel After Extensive Discovery ......................................................... 18

2.    The Settlement Provides Excellent Relief for the Class ............................. 19

3.    The Settlement Is Non-Reversionary and Checks Will Be Mailed Automatically ............................................................................................. 20

4.    There Is No Unfair Preferential Treatment of Class Members ................... 20

5.    The Proposed Attorneys' Fee Award is Preliminarily Appropriate ............ 21

6.    The Release Is Narrowly Tailored .............................................................. 22

7.    The Proposed Class Notice, Notice Plan, and Settlement Administrator Are Sufficient ...................................................................... 22

V.    PROPOSED IMPLEMENTATION SCHEDULE ............................................................. 24

VI.    CONCLUSION ........................................................................................................... 25

**A E Q U I T A S   L E G A L   G R O U P**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**NOTICE OF UNOPPOSED MOTION & UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

4:19-CV-05163-YGR

## **TABLE OF AUTHORITIES**

### Cases

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015)........................................ 21

*Carlin v. DairyAmerica, Inc.*, 328 F.R.D. 393 (E.D. Cal. 2018) ................................................ 12

*Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011) ................... 21

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)............................................. 18

*Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858 (2021)................................................. 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...................................... 14, 16, 17, 18

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ................................................... 14

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........................... 12, 18

*In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019)................................... 12

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................ 17

*Leyva v. Medline Indus., Inc.*, 716 F.3d 510 (9th Cir. 2013) ................................................... 16

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615 (9th Cir. 1982)........................................................................................................................ 18

*Rannis v. Racchia*, 380 Fed. Appx. 646 (9th Cir. 2010) .......................................................... 13

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ......................................... 22

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ..................................................................... 22

*Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) ........................................................................................................................ 13

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ........................................................ 15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................................... 13

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ................................ 13

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010).................................. 16

### Rules

Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 14

Fed. R. Civ. P. 23(c)...................................................................................................... 22, 23

Fed. R. Civ. P. 23(e)...................................................................................................... 17, 22

Fed. R. Civ. P. 23(g)........................................................................................................... 17

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff KRISTI DEL TORO ("Plaintiff") and Defendants CENTENE CORPORATION, CENTENE MANAGEMENT COMPANY, LLC, ENVOLVE PHARMACY SOLUTIONS, INC., and US SCRIPT, LLC ("Defendants" or "Centene") have reached a proposed settlement that resolves this putative wage-and-hour class action and PAGA action, and seek preliminary approval of this settlement pursuant to Federal Rule of Civil Procedure 23.

Centene Corporation is a publicly traded managed healthcare organization. Envolve Pharmacy Solutions, Inc. (formerly known as US Script, LLC) is a subsidiary that provides pharmacy benefit management services. Envolve's business includes operating call centers where patients can call with questions about their prescriptions. Plaintiff has worked as a Customer Service Representative at Defendants' Fresno call center from 2008 to the present.

The proposed settlement provides a total non-reversionary settlement amount of $2,100,000 to approximately 475 class members who worked a total of approximately 51,535 workweeks.[1] The settlement represents approximately 33.4% of the total potential exposure and provides the settlement class with an average payment of approximately $2,961.58 per class member. This is an excellent result for the class, which consists of two groups of call center employees: (1) all non-exempt employees who were Customer Service Representatives or other non-exempt call center workers; and (2) all non-exempt employees who worked at Defendants' Fresno call center.

This settlement, which was reached after approximately two years of litigation, extensive discovery, and a full-day mediation, will fully resolve the lawsuit and will provide a payment of $105,000 (five percent of the gross settlement amount) to the California Labor and Workforce Development Agency. As set forth below, the settlement is fair, reasonable, and adequate, and Plaintiff respectfully requests that the Court grant preliminary approval.

---

[1] Originally, the settlement allocated $2,100,000 to the *Del Toro* case and $750,000 to the *Foon* case, for a total of $2,850,000. Five percent of the gross settlement amount ($142,500) was allocated to settlement of the PAGA claims.

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-1-

**II.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

    **A.      The Parties and Plaintiff's Allegations**

Defendant Centene Corporation ("Centene") is a publicly traded managed healthcare organization.  Declaration of Ronald H. Bae ("Bae Decl.") ¶ 2.  Centene Management Company, LLC ("Centene Management") is a subsidiary of Centene that provides administrative services to companies under the Centene umbrella and has been listed as the employer on Plaintiff Del Toro's wage statements since approximately January 2020.  *Id*.  Envolve Pharmacy Solutions, Inc. is a subsidiary of Centene and was shown as the employer on Plaintiff Del Toro's wage statements from approximately June 2016 through December 2019.  *Id*.  This entity was previously known as US Script, LLC.  US Script was acquired by Centene in 2006 and appears to no longer exist as a separate entity.

Plaintiff Del Toro has worked as a Customer Service Representative at Defendant's Fresno call center from approximately June 2, 2008 to the present.  Bae Decl. ¶ 3.  Her job duties include answering calls from patients and providers about claims, eligibility, covered benefits, and the status of authorizations.

The operative Second Amended Complaint alleges that Defendants failed to pay regular and overtime wages, failed to provide employees with compliant meal and rest breaks, failed to provide accurate wage statements, failed to reimburse business expenses, engaged in unfair competition, and is liable for PAGA penalties.  Bae Decl. ¶¶ 4, 20.

The unpaid wage claim is based on allegations that employees received non-discretionary bonuses that were not factored into the overtime rate, were not paid for the non-trivial amount of time it took to clock in and out of the timekeeping and phone systems, and had to work off the clock before and after their shifts and during meal breaks to keep up with their workload.  Bae Decl. ¶¶ 46-48.  As to the meal and rest break claims, Plaintiff alleges that employees were denied the opportunity to take compliant breaks because of the strict schedule adherence and productivity requirements.  Bae Decl. ¶¶ 50, 52.  The claim for unreimbursed expenses alleges that employees were not reimbursed for the costs of using their personal telephones, computers, and utilities while working remotely during the pandemic.  Bae Decl. ¶ 54.  The wage statement claim is derivative of

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

the claim for unpaid wages.  Bae Decl. ¶ 58.  The putative California Labor Subclass is defined as all non-exempt employees who worked for Defendants in California between August 19, 2015 and the present.  (SAC, ¶ 15).

### B.    Relevant Procedural History

On August 19, 2019, Plaintiff Del Toro filed her complaint in the Northern District of California (Dkt. 1).  Bae Decl. ¶ 4.  The complaint alleged the following causes of action: (1) failure to comply with the Fair Credit Reporting Act, 15 US.C. § 1681b(b)(2)(A); (2) failure to pay overtime wages under California Labor Code §§ 510, 1194, and 1198; (3) failure to provide compliant meal breaks under California Labor Code §§ 226.7 and 512; (4) failure to provide compliant rest breaks under California Labor Code § 226.7; (5) failure to pay waiting time penalties under California Labor Code §§ 201-203; (6) failure to provide accurate wage statements under California Labor Code § 226(a); (7) unfair competition under California Business & Professions Code § 17200, *et seq.*; and (8) penalties under the Private Attorneys General Act, California Labor Code § 2698, *et seq*.  *Id*.  These claims were alleged against Defendants Centene Corporation, Envolve Pharmacy Solutions, Inc., and US Script, LLC, doing business as U.S. Script, Inc.  *Id*.  As to the wage and hour claims, the putative class was defined as all of Defendants' non-exempt California employees between August 19, 2015 and the present (Dkt. 1, ¶ 15(b)).  *Id*.

On October 21, 2019, Defendants filed a motion to dismiss the complaint and to transfer the case to the Eastern District of California (Dkt. 13).  Bae Decl. ¶ 5.  The motion argued that Plaintiff did not have standing to bring the FCRA claim and that the claim was time-barred, that not enough facts were alleged to support the wage and hour claims, and that Plaintiff did not have standing for the waiting time penalties claim.  *Id*.  On November 4, 2019, Plaintiff filed an opposition to the motion (Dkt. 16).  Bae Decl. ¶ 6.  On November 12, 2019, Defendants filed a reply (Dkt. 17).  *Id*.  On April 2, 2020, Judge Koh dismissed the FCRA claim with leave to amend, dismissed the claim for waiting time penalties with prejudice, and granted Plaintiff leave to plead facts to establish federal jurisdiction over the wage and hour claims (Dkt. 22).  *Id*.

On May 5, 2020, Plaintiff Del Toro filed a First Amended Complaint ("FAC") (Dkt. 27).  Bae Decl. ¶ 7.  The FAC added factual allegations regarding the FCRA claim and jurisdiction under

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1   the Class Action Fairness Act, and removed the waiting time penalties claim.  *Id.*

2       On May 19, 2020, Defendants filed a motion to dismiss the FCRA claim as barred by the

3   statute of limitations (Dkt. 30).  Bae Decl. ¶ 9.  Plaintiff's opposition was filed on June 2, 2020

4   (Dkt. 33) and Defendants' reply was filed on June 9, 2020 (Dkt. 34).  *Id.*  On October 14, 2020, the

5   FCRA claim was dismissed with prejudice (Dkt. 49).  *Id.*

6       On October 23, 2020, Plaintiff dismissed Defendant U.S. Script, LLC (Dkt. 51).  Bae Decl.

7   ¶ 9.  Plaintiff's investigation and discovery revealed that U.S. Script was acquired by Centene in

8   2005 and subsequently merged with Centene.  *Id.*

9       On October 28, 2020, Defendants filed an answer to the FAC (Dkt. 52).  Bae Decl. ¶ 10.

10      On November 25, 2020, the Court issued a case management order, which set a deadline of

11  July 8, 2021 for Plaintiff to file her motion for class certification (Dkt. 58).  Bae Decl. ¶ 11.

12      In December 2020, Plaintiff's counsel entered a joint prosecution agreement with counsel

13  for Plaintiff Michelle Foon in a case entitled *Foon v. Centene Management Company, LLC, et al.*,

14  Eastern District of California Case No. 2:19-cv-01420-MCE-AC (filed on June 20, 2019).  Bae

15  Decl. ¶ 12.  The *Foon* case alleges claims for failure to provide rest breaks, failure to provide meal

16  breaks, failure to reimburse expenses, failure to pay overtime wages, failure to furnish accurate

17  itemized wage statements, unfair competition under California Business & Professions Code §

18  17200, *et seq.*; PAGA penalties; and failure to produce records upon request pursuant to Labor

19  Code § 1198.5.  These claims are alleged on behalf of non-exempt and exempt California

20  employees who worked for Centene between June 20, 2015 and the present.  *Id.*[2]

21      On February 18, 2021, the parties filed a stipulation to vacate the class certification deadline

22  in light of the scheduled joint mediation of the *Del Toro* and *Foon* actions (Dkt. 59).  Bae Decl. ¶

23  13.

24      On February 19, 2021, the Court issued an order staying the case until further notice and

25  denied the stipulation as moot (Dkt. 60).  Bae Decl. ¶ 14.

26  _____

27      [2]  Plaintiff's counsel entered into the joint prosecution agreement because the claims
    overlapped, in particular, the allegation that non-exempt employees did not receive compliant rest

28  breaks because of the demands of the job.  The cases were jointly prosecuted, but ultimately the
    parties decided to seek approval of the settlements separately.  Bae Decl. ¶ 12.

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

On March 18, 2022, Plaintiff filed her initial Motion for Preliminary Approval, which sought approval of both the *Del Toro* and *Foon* settlements. Bae Decl. ¶ 15. The parties believed it was appropriate to seek approval of both settlements at the same time in the same Court because the cases involved similar claims and were litigated jointly. *Id*. In July 2022, the parties decided to seek approval of each settlement separately due to the Court's concerns that the evidence to prove the violations was not the same in each case. *Id*. ¶¶ 17-19.

On August 26, 2022, Plaintiff filed a Second Amended Complaint, which added Centene Management Company, LLC as a defendant, added a claim for unreimbursed business expenses under California Labor Code §§ 2800 and 2802, and deleted the dismissed FCRA claim. Bae Decl. ¶ 20 (Dkt. 92).

### C. Discovery and Investigation

Over the course of the last two years, Plaintiff's counsel expended extensive time and resources conducting investigation and discovery regarding the class claims, as follows:

#### 1. Pre-Filing Investigation

Plaintiff's counsel made a request for Plaintiff's employment records pursuant to California Labor Code §§ 226(b), 432 and 1198.5. The documents were produced on June 1, 2018, and Plaintiff's counsel reviewed and analyzed them prior to filing the complaint, in addition to documents provided by Plaintiff. Bae Decl. ¶ 22. Plaintiff also requested documents related to wage-and-hour claims against Defendants from the California Division of Labor Standards Enforcement pursuant to a Public Records Act request. *Id*. ¶ 23.

#### 2. Written Discovery

On May 7, 2020, the parties exchanged initial disclosures. Bae Decl. ¶ 24.

On May 8, 2020, Plaintiff served one set of Special Interrogatories and four sets of Requests for Production of Documents on Defendants Centene and Envolve Pharmacy Solutions, Inc. Bae Decl. ¶ 25. These requests sought the putative class members' names and contact information; Plaintiff's employment records; policy documents relating to the FCRA and wage and hour claims; the putative class members' time and payroll records; and other documents relevant to the class certification analysis, such as documents reflecting communications between

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

Defendants and the putative class members on relevant topics. *Id.*

Defendants initially responded with objections only. Among other issues, Defendant Centene argued that it is a holding company with no employees, did not employ Plaintiff, and that discovery of the putative class members' time and payroll records should be limited to customer service representatives at the Fresno location. Bae Decl. ¶ 26. On October 7, 2020, the parties filed a joint discovery letter brief regarding their disputes (Dkt. 47). *Id.* ¶ 22. On October 14, 2020, the Court ordered Defendants to provide substantive responses to Plaintiff's requests (Dkt. 48). *Id.* ¶ 28.

On October 21, 2020, Defendants provided supplemental, substantive responses to Plaintiff's discovery requests. Bae Decl. ¶ 29. On October 28, 2020, Defendants produced responsive documents, including a 25% random sampling of the putative class members' time and payroll data. *Id.* ¶ 30. On November 5, 2020, Defendants re-produced the sampling data to correct errors in the initial production: the data for 3 employees was incomplete, and records were included for 8 employees whose employment ended before the class period started. The corrected sampling added data for additional randomly selected individuals so that Plaintiff received a 25% sampling. *Id.* ¶ 31. The production included approximately 163,116 lines of data for 82 employees from August 2015 through October 2020. *Id.*

On October 22, 2020, Phoenix Settlement Administrators mailed a *Belaire-West* notice to 330 putative class members. Bae Decl. ¶ 32. On December 1, 2020, Plaintiff received a list with the names and contact information of 320 putative class members. *Id.* ¶ 33.

In addition, Defendants produced 1,800 pages of additional documents, including Plaintiff's time, payroll, and personnel records; several versions of the employee handbook; standalone wage-and-hour policies relating to timekeeping, scheduling, overtime, bonuses, meal and rest breaks, and unreimbursed expenses; and documents relating to the timekeeping and attendance system. Bae Decl. ¶ 34.

For purposes of mediation, Defendants produced spreadsheets with the names and contact information for 383 putative class members, as well as their job titles, work locations, and dates of employment. Bae Decl. ¶ 35. The mediation disclosures also included Excel spreadsheets

containing time and payroll data for approximately 378 putative class members from 2015 through 2021. *Id.* ¶ 36. Plaintiff retained an expert to analyze the time and payroll data and prepare a damages analysis for mediation. *Id.*

Plaintiff noticed the deposition of Centene's 30(b)(6) witness(es) regarding topics relating to the joint employer issue and wage-and-hour policy issues. Bae Decl. ¶ 37. Plaintiff was prepared to proceed with the deposition if the case did not settle at mediation.

Plaintiff's counsel thoroughly analyzed all of the available information and documents to evaluate the strength of each claim and prepare a class-wide damages analysis. Bae Decl. ¶ 38.

### 3.    Settlement Negotiations

All of Plaintiff's counsel's pre-filing investigation, discovery during litigation, and pre-mediation investigation enabled Plaintiff's experts to fairly estimate Defendants' exposure and the probability of prevailing on each claim at class certification and trial. Plaintiff was thus able to enter settlement negotiations armed with the information required to settle this matter for a fair and reasonable amount, having thoroughly assessed the risks and prepared an estimated class-wide damages model. Bae Decl. ¶ 39.

On May 21, 2021, the parties participated in a full-day mediation with the Honorable Jay C. Gandhi (Ret.), a well-respected mediator who is very knowledgeable and experienced in wage-and-hour class actions. The *Del Toro* and *Foon* cases were mediated simultaneously, but the settlement amount was negotiated separately for each case. After hours of vigorous negotiation, the parties were able to reach a tentative settlement for a total amount of $2,850,000. Of this amount, $2,100,000 was allocated to the *Del Toro* case and $750,000 was allocated to the *Foon* case. Bae Decl. ¶ 40. Thereafter, the parties negotiated the terms of the Memorandum of Understanding, First Amended Joint Stipulation of Class Action Settlement ("Joint Stipulation"), and the notice packet. *Id.* ¶ 41. These negotiations lasted about 8 months and the parties encountered numerous difficulties in reaching agreement as to the terms of the settlement and the language of the notice packet. Nevertheless, the parties worked together as best they could to finalize the settlement terms, which are memorialized in the Joint Stipulation. *Id.* A true and correct copy of the Joint Stipulation is attached as Exhibit A to Declaration of Ronald H. Bae. *Id.*

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-7-

1  The notice packet, which consists of a Notice of Class Action Settlement and an Opt-Out Form, is

2  attached to the Joint Stipulation as Exhibits 1 and 2. *Id.*

3       The negotiations were conducted at more than arm's-length and the resulting settlement was

4  the outcome of an informed and educated analysis regarding certification and liability issues and the

5  total exposure in relation to the costs and risks attendant to Plaintiff and the Class.  Bae Decl. ¶ 42.

6  This settlement was accomplished after discovery and investigation, with Plaintiff having invested

7  in extensive factual and legal research, engaged in numerous discussions and exchanges of

8  correspondence, reviewed and analyzed time and payroll records and data, policy documents, and

9  other relevant documents, and conducted extensive negotiations at the mediation and thereafter.  It

10  was only after the parties thoroughly assessed the risks presented by the facts of the case and the

11  current status of the applicable law, that they entered into a well-reasoned settlement.  Bae Decl. ¶

12  43.

13       Moreover, there were risks and uncertainty regarding a number of factors in the case

14  which gave the parties the perspective and the incentive to thoroughly assess the risks of the case.

15  The joint employer issue was complex and would have been heavily litigated, with no guarantee

16  that Plaintiff would be able to prove that all Defendants employed Plaintiff and the Class

17  Members.  Also, it is possible that Plaintiff would not be able to certify all of the claims.  Plaintiff

18  believed it would be straightforward to certify the claim for unpaid overtime based on the alleged

19  failure to factor non-discretionary bonuses into the regular rate.  However, the off-the-clock claim

20  would likely prove more challenging to certify.  Further, many of the written meal and rest break

21  policies appeared to be facially compliant.  Even if Plaintiff succeeded in certifying some or all of

22  the claims, there was no guarantee that Plaintiff would win on the merits, and surviving any post-

23  trial motions or appeals would have come at great litigation costs and expenses to the Class.  Bae

24  Decl. ¶ 44.  These factors also support a finding that the settlement is fair and reasonable.

25  **III.    SUMMMARY OF SETTLEMENT TERMS**

26       **A.    The Proposed Settlement Class**

27       The Settlement Class to be conditionally certified shall consist of all California-based

28  employees of Defendants employed from August 19, 2015 through July 15, 2021 ("Class Period"),

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

in the following positions as identified in Centene's HRIS system: (1) all non-exempt employees who were Customer Service Representatives or other non-exempt call center workers; and (2) all non-exempt employees working in Fresno (the "Class Members"). Bae Decl. ¶ 41, **Ex. A** (Settlement Agreement § D.1).[3]

The parties also seek the Court's approval, for settlement purposes only, of a representative action as to all claims asserted pursuant to PAGA on behalf of the State of California and all employees who fall within the class definition and worked for Defendants in California at any time from May 10, 2018 through July 15, 2021. Sett. Agmt. § D.1.

The definition of the class was narrowed for settlement. Plaintiff's original and first amended complaints alleged claims on behalf of the now-dismissed FCRA class and a California Labor Subclass. (Dkt. 1, ¶ 15; Dkt. 15, ¶ 15). The California Labor Subclass was defined as of Defendant's non-exempt California employees between August 19, 2015 and the present. The settlement class includes only call center employees because Plaintiff's allegations focus on policies and procedures applicable to these employees.[4] The parties agreed to cut off the class and PAGA period on July 15, 2021 pursuant to the escalator clause in § D.13 of the Settlement Agreement.[5]

**B.      Relief Provided by the Settlement Agreement**

The Total Settlement Amount is $2,100,000, which will be used to compensate Class Members and PAGA Employees, make a $78,750 payment to the LWDA (75% of the $105,000 PAGA allocation), and pay the Settlement Administrator's Expenses, the Class Representative's service payment, and Class Counsel's attorneys' fees and costs. Sett. Agmt. §§ D.2-D.7. The employer-side payroll taxes on the wage portion of the settlement will be paid separately and in addition to the Total Settlement Amount. *Id.* § D.9.

---

[3] All further references to the Settlement Agreement ("Sett. Agmt.") will cite to it directly.
[4] Plaintiff reserved the right to seek certification of a broader class if the litigation proceeded.
[5] The overlap between the Del Toro and Foon classes turned out to be smaller than Plaintiffs' counsel initially believed. There are 4 non-exempt employees (with approximately 150 workweeks total) who fall within both the *Del Toro* and *Foon* class definitions. These individuals will be compensated under both settlements.

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

### 1.    Settlement Allocation Formula

The participating Class Members ("Class Participants") will be paid pursuant to an allocation formula based on the number of workweeks they worked for Defendants during the Class Period. Sett. Agmt. § D.6. Each Class Member's Individual Settlement Payment will be calculated by dividing the Class Member's Individual Workweeks by the Total Workweeks, and multiplying the resulting ratio by the Net Settlement Amount. *Id*. § D.6(a)-(b). For tax purposes, the Individual Settlement Payments will be allocated as follows: 30% as wages, 40% as interest and expense reimbursements, and 30% as penalties. *Id.* § D.9.

### 2.    No Reversion and No Claim Form Required

This is a non-reversionary settlement. Sett. Agmt. § D.7. To make the relief provided by the Settlement as accessible to Class Members as possible, the Parties have agreed to eliminate the claims process. *Id*. § C.6. Each Class Member who does not submit a timely and valid opt-out request within 45 days after the Notice Packet is first mailed will be automatically mailed a check for his or her pro rata portion of the Settlement. *Id*. § C.5. Pursuant to *Arias v. Superior Court*, 46 Cal. 4th 969 (2009), PAGA Employees cannot opt out of the Settlement.

### 3.    Distribution of Uncashed Settlement Checks

The Settlement Agreement provides that Class Members shall have one-hundred eighty (180) calendar days from the postmark date of the checks to deposit or otherwise cash their settlement checks. Sett. Agmt. § D.7. As to the funds that remain in the Settlement Fund Account after 180 days due to Class Participants' failure to deposit or cash their settlement checks, those funds will be sent to the State of California's Unclaimed Property Fund in the Class Participants' names. *Id*.

### 4.    Scope of the Release

Class Participants will release all claims arising from the same set of facts alleged in the SAC or in the LWDA letters, including claims for: failure to provide rest periods and meal periods; failure to pay minimum, regular, and overtime wages; failure to timely pay wages during employment and/or upon termination; unreimbursed business expenses; improperly itemized wage

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

statements; unfair competition; and violations of the Private Attorneys General Act.  Sett. Agmt. §
A, p. 5 & § D.11.

The time period covered by the release is August 19, 2015 through December 31, 2021.
*Id.* § A, p. 6.  The released parties are defined as:

> Defendants and any of their former and present parents, subsidiaries,
> affiliates, insurers, insurance policies, and benefit plans; each of the
> former and present officers, directors, employees, equity holders (partners,
> shareholders, holders of membership interests, etc.), agents,
> representatives, administrators, fiduciaries, and attorneys of the entities
> and plans described in this sentence; and any other predecessors,
> successors, transferees, and assigns of each of the persons and entities
> described in this sentence.

*Id.* § A, pp. 5-6.

The PAGA Employees will release all claims for PAGA penalties that were alleged or
could have been alleged by Plaintiff based on the facts alleged in the SAC or in Plaintiff's LWDA
letters.  *Id.* § A, p. 4 & § D.12.  The PAGA release period is May 10, 2018 through December 31,
2021.  *Id.*, pp. 4-5.

**C.    Requested Attorneys' Fees and Costs and Proposed Service Payments to the
Class Representative**

The Settlement Agreement allows Class Counsel to apply for an award of attorneys' fees of
30% of the Total Settlement Amount ($630,000) and litigation costs not to exceed $12,000.  Sett.
Agmt. § D.4.  Plaintiff will apply to the Court for a service payment of $10,000 to compensate
Plaintiff for her time and service to the class.  *Id.* § D.3.  These amounts are preliminarily
reasonable and justified based on the work performed and the costs incurred by Plaintiff and
Plaintiff's counsel in order to obtain a successful result on behalf of the Class Members.  These
amounts also serve as consideration for the general release to which the named Plaintiff haas
agreed.  *Id.*; Bae Decl. ¶¶ 68-70.  To provide further justification for awarding these amounts,
Plaintiff will file a Motion for Award of Class Representative Service Payment, Settlement
Administrator's Expenses and Class Counsel's Attorneys' Fees and Costs to be heard at the same
time as the Motion for Final Approval.  To the extent the Court awards less than the requested
amounts, the difference will be added to the amount to be distributed to the Class Participants.  Sett.

Agmt. § D.3.

### D.    Settlement Administration

As explained further in Section IV.B.7 below, the Settlement Agreement provides for Class Members to receive direct notice of the Settlement by mail. *Id*. § C.5. The notice administration plan will ensure that substantially all of the Class Members will receive notice of the Settlement and will be adequately apprised of and able to exercise their rights and options thereunder. ILYM Group, Inc., an experienced third-party claims administrator, will handle all aspects of the notice process and settlement administration. Bae Decl. ¶¶ 71-72. Class Counsel will also be available to the Class Members to answer their questions and encourage participation.

## IV.    ARGUMENT

### A.    The Settlement Class Should Be Provisionally Certified

During the preliminary approval analysis, the Court determines whether certification of a provisional settlement class is appropriate and whether the settlement is fair. *Carlin v. DairyAmerica, Inc.*, 328 F.R.D. 393, 398-399 (E.D. Cal. 2018) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). Pursuant to Federal Rule of Civil Procedure 23(a), the plaintiff must show that the requirements of numerosity, commonality, typicality, and adequacy of representation are met. The settlement class must also meet one of the requirements of Rule 23(b). Plaintiff seeks certification under Rule 23(b)(3), which requires that common questions of law or fact predominate over individual questions and that class treatment is a superior method of resolving the controversy.

The criteria for class certification "are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 556-557 (9th Cir. 2019) (en banc). In a litigation class, manageability is an important factor, but it plays no role in a settlement class because there will be no trial. *Id*. Similarly, the predominance requirement is "readily met." *Id*. at 559. However, the class definition receives heightened attention in a settlement class. *Id*. at 557. This requirement is designed to protect the interests of absentees by ensuring that the class definition is not unwarranted or overbroad. *Id*.

/ / /

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**1.    The Settlement Class Is Sufficiently Numerous**

The class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). This requirement is satisfied when there are as few as 40 class members. *Rannis v. Racchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010). Here, the settlement class includes approximately 475 employees. Bae Decl. ¶ 45. Thus, the numerosity requirement is easily met.

**2.    There Are Common Issues of Law and Fact**

This requirement is construed permissively and is satisfied when there are shared legal issues with divergent factual predicates, or when there is a common core of facts coupled with disparate legal issues. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). Even "a single common question" is sufficient if the "determination of its truth or falsity will resolve an issue that is central to the validity of [the class claims] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

Here, the common questions include whether Plaintiff and the class members (1) received non-discretionary bonuses that Defendants failed to factor into the overtime rate of pay; (2) were suffered and/or permitted to work time for which they were not compensated; (3) were provided with a duty-free meal break of at least 30 minutes for every 5 hours of work; (4) were provided with a duty-free rest break of at least 10 minutes for every 4 hours of work or major fraction thereof; (5) were paid all wages due upon separation of employment; and (6) were provided with accurate, itemized wage statements. These questions are based on alleged policies and practices that apply to the entire class and discrete subclasses. This is sufficient to satisfy the commonality requirement for settlement purposes. *See Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) (granting final approval of a settlement involving allegations of off-the-clock work and failure to provide meal and rest breaks).

**3.    Plaintiff's Claims Are Typical of the Settlement Class**

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. Typicality refers to the nature of the claim or defense, not the specific facts from which it arose, and focuses on whether other class members "have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs,

-13-

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1  and whether other class members have been injured by the same course of conduct." *Hanon v.*

2  *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

3         Plaintiff is a current CSR who performs the same work and is subject to the same wage-

4  and-hour policies and practices and the same working conditions as the Class Members.

5  Plaintiff's and the Class Members' primary job duties are to answer and place calls regarding

6  pharmacy benefits (e.g., whether a prescribed medication is covered by a patient's insurance plan).

7  Plaintiff and approximately 168 other Class Members worked at the call center located in Fresno,

8  California.  The other Class Members worked at call centers located in Huntington Beach, Rancho

9  Cordova, Sacramento, and Woodland Hills, California.  Employees performed substantially the

10  same work at all of the call centers and were subject to the same wage-and-hour policies,

11  including policies regarding work schedules and hours worked, overtime, incentive bonus plans,

12  timekeeping, meal and rest breaks, and expense reimbursement, as set forth in more detail below

13  in Section IV.A.5.  Thus, Plaintiff's work experience was similar to that of the class members, and

14  they experienced the same alleged injury.

15         **4.      Plaintiff and Her Counsel Will Adequately Represent the Settlement**

16                 **Class**

17         A representative plaintiff must be able to "fairly and adequately protect the interests of the

18  class." FED. R. CIV. P. 23(a)(4).  The adequacy inquiry involves two questions: (1) whether the

19  named plaintiffs have conflicts of interest with the proposed class; and (2) whether the plaintiffs

20  are represented by qualified and competent counsel.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

21  1020 (9th Cir. 1998).

22         Plaintiff has no conflict of interest with the class members.  She performed the same work

23  and was subject to the same policies and practices as the Class Members.  Plaintiff's claims are

24  identical to the claims of the other class members and arise from the same course of conduct by

25  Defendants.  Plaintiff has embraced their responsibilities as the class representative by actively

26  participating in this case, providing documents, identifying potential witnesses, providing valuable

27  information regarding the policies and practices at issue in this case and Defendants' business

28  structure, engaging in the settlement process, and consulting with counsel throughout the

litigation. Bae Decl. ¶¶ 68-70. Plaintiff has devoted considerable time to this litigation and is prepared to continue to do so, demonstrating her commitment to achieving the best possible result for the class.[6] *Id.* Further, Plaintiff is represented by qualified and competent counsel who have the experience and resources necessary to vigorously pursue this action. Bae Decl. ¶¶ 61-67; Righetti Decl. ¶¶ 1-5; Nathan Decl. ¶¶ 1-5. The firms representing Plaintiff have certified many class actions in state and federal court, for both litigation and settlement purposes, and have recovered many millions of dollars on behalf of class members.

### 5.    Common Issues Predominate Over Individualized Issues

Plaintiff is proceeding under Rule 23(b)(3), which requires a showing that common questions of law and fact predominate over individualized issues. This inquiry tests whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted). An individual question is defined as "one where members of a proposed class will need to present evidence that varies from member to member." *Id.* A common question, on the other hand, is "one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.*

Here, the legality of the challenged policies and practices involve common questions that can be decided with common proof and will generate an answer common to the entire class. The common questions include (1) whether the bonuses paid to Plaintiff and the class members are non-discretionary; (2) if yes, whether the bonuses were properly factored into the overtime rate; (3) whether the process of logging in and out of the phone and timekeeping systems caused employees to work unpaid compensable time at the beginning and/or end of their shifts; (4) whether employees were denied compliant meal and rest breaks because of Defendants' productivity rules/guidelines, such as requiring employees to strictly adhere to a schedule and be available to answer calls for a certain percentage of their shift; (5) whether Defendants paid meal and rest break premiums when required; (6) whether employees' wage statements were non-

---

[6] Further details regarding Plaintiff's work on the case will be presented in a declaration with the motion for final approval.

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

compliant in light of the alleged failure to pay wages and provide meal and rest breaks; and (7) whether employees who worked remotely during the pandemic were reimbursed for work-related expenses.

If the case were to be litigated, the common proof that would include, among other things, employee handbooks, standalone policy documents, performance reviews that reflect productivity rules, and Plaintiff's and the class members' time and payroll records, as well as documents reflecting when call center employees logged into and out of their phones.  The class members would have to individually prove their damages, but "damage calculations alone cannot defeat certification."  *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) ("damages determinations are individual in nearly all wage-and-hour class actions").

### 6. A Class Action Is Superior to Individual Actions

Finally, a class action is a superior method for resolving the controversy.  The superiority inquiry necessarily involves comparing a class action against alternative methods of dispute resolution.  *Hanlon*, *supra*, 150 F.3d at 1023.  The alternative here would be individual lawsuits by the class members.  Because the individual amounts in controversy are relatively small, most class members would lack the resources and financial incentive to pursue individual claims. Furthermore, class treatment alleviates the heavy burden on the Court of adjudicating individual lawsuits.  The Settlement also eliminates the risk of duplicative lawsuits and ensures that the class members' claims are resolved in an efficient and cost-effective manner.

Although Defendants disagree that the proposed class would satisfy the requirements for a litigated class action, Defendants do not object to certification of the class for purposes of this settlement.  Sett. Agmt. § C.3.

### 7. The Court Should Appoint Plaintiff as the Class Representative and Plaintiff's Counsel as Class Counsel

Because the commonality, typicality, and adequacy requirements of Rule 23(a) are met, Plaintiff should be appointed as the class representative.  Plaintiff's counsel should also be appointed to represent the settlement class.  The factors that apply in deciding whether to appoint

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-16-

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

class counsel are (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  FED. R. CIV. P. 23(g)(1)(A).

As set forth herein, Plaintiff's counsel conducted a thorough investigation of the claims at issue before filing the complaint and during the two years of litigation leading up to this settlement.  Plaintiff's counsel has extensive experience litigating wage-and-hour class actions and representative actions, is well-versed in the applicable law, and has ample resources to dedicate to the case.  Bae Decl. ¶¶ 61-67; Righetti Decl. ¶¶ 1-5; Nathan Decl. ¶¶ 1-5.  The firms representing Plaintiff have vigorously represented the class members' interests, and will continue to do so.

**B.     The Settlement Should Be Preliminarily Approved**

A class action settlement requires court approval upon a finding that the settlement is fair, reasonable, and adequate.  FED. R. CIV. P. 23(e); *Hanlon*, 150 F.3d at 1026.  There are two sources of factors for the fairness analysis: case law, and Federal Rule of Civil Procedure 23(e).  The fairness factors established by case law provide that a settlement should be preliminarily approved if it (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to the class representatives or segments of the class; and (4) falls within the range of possible approval.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-1080 (N.D. Cal. 2007).

The relevant factors are under Rule 23(e)(2) are whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account (a) the costs, risks, and delay of trial and appeal; (b) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class members' claims; (c) the terms of any proposed award of attorney's fees, including the timing of the payment; and (d) any agreement required to be identified under Rule 23(e)(3)[7]; and (4) the proposal treats class members equitably relative to each other.

---

[7] There are no agreements to disclose under this rule.

The relative degree of importance of a particular factor depends on "the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). In applying these factors, the Court should also be guided by the "strong judicial policy' that favors the settlement of class actions." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Hanlon*, 150 F.3d at 1027 (a settlement is a "private consensual decision of the parties" and the approval analysis is limited to considering whether the settlement is a product of collusion and is fair as a whole).

### 1.    The Settlement Was Negotiated at Arm's Length by Experienced Counsel After Extensive Discovery

The Settlement is the product of protracted mediation and arm's-length negotiation conducted with the assistance of an experienced mediator Jay C. Gandhi who is a retired federal magistrate. Class Counsel advocated vigorously on behalf of the Class throughout the negotiations in order to negotiate a settlement that is in the best interest of the Class Members and provides adequate class-wide relief. Bae Decl. ¶¶ 39-44. The vigorous negotiations between the Parties resulted in a reasonable compromise that is the product of genuine give and take justified by the facts of this case. The mediation took place after approximately two years of discovery, motion practice, and analysis and research of the issues likely to be raised at class certification and the merits stage of the litigation. Following the mediation, the parties spent several months negotiating the terms of the Memorandum of Understanding and the Joint Stipulation of Settlement. Plaintiff is represented by highly experienced class action litigators who believe that the Settlement is an excellent result for the Class Members.

Further, there are no "subtle signs of collusion." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). The settlement is non-reversionary. The Settlement provides for an attorneys' fee award of up to 30% of the Total Settlement Amount, which is higher than the Ninth Circuit benchmark of 25%, but the Settlement is an outstanding result for the Class and thus the a slight upward adjustment is warranted. Similarly, the request for Plaintiff's

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

enhancement award will be supported by evidence of the work she has done and the risk she has undertaken, which is especially high because Plaintiff is a current employee.

## 2.    The Settlement Provides Excellent Relief for the Class

The Settlement provides a significant monetary relief to the Class Members to compensate them for the alleged wage-and-hour violations at issue in this case. Class Counsel estimates the Total Settlement Amount to represent approximately 33.4% of Defendants' estimated realistic exposure, which is well within the range of possible approval. Bae Decl. ¶¶ 45-60. The Class Members will receive automatic payments which are estimated to be approximately $2,961.58 on average, assuming that all Class Members participate in the Settlement ($1,406,750 estimated net settlement amount ÷ 475 Class Members).[8] The value of the settlement per workweek is estimated to be approximately $27.30 ($1,406,750 ÷ 51,535 workweeks). Further, 5% of the Total Settlement Amount ($105,000) was allocated to the PAGA claim. Sett. Agmt. § D.5. As required by statute, 75% ($78,750) will be paid to the LWDA. The remaining 25% ($26,250) will be distributed to approximately 388 PAGA Employees. Thus, the PAGA payments are estimated to be approximately $91.82 on average ($26,250 ÷ 388).

This represents an excellent recovery for the Class Members, particularly considering the risks of further litigation. There is no guarantee that Plaintiff could certify the off-the-clock claim or prevail on the merits. To the extent the claim applies to call center employees, Plaintiff could potentially compare employees' time records against data showing when they logged into and out of the phone system to determine how much unpaid time may have occurred during the process of clocking in and out. There is a chance that the amounts of time could be small and/or infrequent. To the extent Plaintiff alleged that employees were required or pressured to work off the clock to complete their work, this would likely be difficult to prove. Plaintiff believes that the claim for failure to factor non-discretionary bonuses into the overtime rate was strong, but the amount of unpaid wages would be low. Also, the facts supporting this claim could also provide a strong foundation for a claim that the bonuses should be factored into the meal break premium rate.

---

[8] When the original Joint Stipulation of Settlement was negotiated, Defendants represented that there were approximately 433 Class Members. (Dkt. 73-1 at 44:12-14.) Defendants currently represent that there are 475 Class Members (an increase of 42).

*Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858 (2021).  With regard to the meal and rest breaks, the written policies appeared to be compliant, which would make certification significantly more challenging.  The pay data indicates that meal break premiums were sometimes paid, although it appears that no rest break premiums were paid.  Plaintiff believes that the claims for waiting time penalties, wage statement penalties, and PAGA penalties are strong to the extent they are derivative of the bonus/regular rate claim, but Defendants could succeed in arguing that they acted in good faith and not willfully.

Moreover, litigating the case through certification, summary judgment, and trial would have been expensive and time-consuming, with the risk that Plaintiff could lose at each step of the way and recover nothing, barring a successful appeal.  For these reasons, the settlement value is fair, reasonable, and adequate.

### 3. The Settlement Is Non-Reversionary and Checks Will Be Mailed Automatically

The method for distributing relief to the Class Members is simple and effective.  The Class Members have been identified from Defendants' employment records and will be mailed automatic payments unless they opt out.  The PAGA Employees cannot opt out, as provided by law, but will also be mailed automatic payments.  No part of the settlement will revert to Defendants.

### 4. There Is No Unfair Preferential Treatment of Class Members

The Settlement does not give preferential treatment to any Class Members.  The settlement provides for the funds to be allocated to each participating Class Member proportionally based on the number of weeks they worked for Defendants, as shown by Defendants' records.  Sett. Agmt. § D.6.  The settlement class is cohesive because it consists of non-exempt Customer Service Representatives and other non-exempt call center workers.  The vast majority of the "other non-exempt call center workers" performed similar work as CSRs.  Examples of job titles for these positions include Member Connections Representative and Pharmacy Credentialing and Contract Representative.  Employees in these positions handled calls with patients and providers regarding pharmacy benefits, but had more specialized roles than CSRs.  A small number of employees

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

provided services needed to run the call center, such as receptionists, data analysts, and auditors who reviewed claims to make sure they were adjudicated correctly. These employees were all subject to the same relevant wage-and-hour policies as Customer Service Representatives, including policies regarding work schedules and hours worked, overtime, incentive bonus plans, timekeeping, meal and rest breaks, and expense reimbursement.

Further, the proposed incentive award to Plaintiff is within the range approved by courts in this district. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-267 (N.D. Cal. 2015) (noting that incentive awards compensate wage-and-hour plaintiffs for a "significant reputational risk" and higher awards are appropriate when the average class member payment is high); *Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645 at *5 (N.D. Cal. Feb. 16, 2011) (awarding $10,000 each to two plaintiffs in a $1,725,000 settlement). The requested award also accounts for the risk that Plaintiff took on by filing this lawsuit while continuing to work for Defendants.

### 5. The Proposed Attorneys' Fee Award is Preliminarily Appropriate

Pursuant to the Settlement Agreement, Plaintiff's counsel will seek attorneys' fees not to exceed $630,000 (30% of the Total Settlement Amount) and actual litigation costs not to exceed $12,000. Sett. Agmt. § D.4. To date, Plaintiff's counsel have billed approximately 662.6 hours on this case. Bae Decl. ¶ 73; Righetti Decl. ¶ 9; Nathan Decl. ¶ 6. Additional hours will be required to see the case through final approval and will be detailed in Plaintiff's motion for final approval. Currently, Plaintiff's counsel's lodestar is $463,702.50, which represents a multiplier of 1.36. Bae Decl. ¶ 73; Righetti Decl. ¶ 9; Nathan Decl. ¶ 6. The costs incurred to date amount to $8,252.03. Bae Decl. ¶ 74. This includes the cost of having an expert prepare a damages analysis for mediation.

The motion for attorneys' will be filed by the ninth day after the Notice Packet is mailed to ensure that Class Members have 35 days to review the motion (the opt-out period is 45 days). The awarded fees and costs will be paid after the settlement has been finally approved and the deadline to file appeals has passed, assuming that no appeals are filed. To the extent the Court awards less than the requested amount of fees and costs, the difference will be distributed *pro rata* to the Class Members. Sett. Agmt. § D.4.

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**6.    The Release Is Narrowly Tailored**

As set forth above in Section III.B.4, the release is tailored to track the definition of the settlement class and the PAGA group.  The Class Members will release all claims arising from the same set of facts alleged in the operative SAC and in Plaintiff's LWDA letters.  Sett. Agmt. § A, p. 5 & § D.11.  The release period for class claims is from August 19, 2015 (four years prior to the date of filing of the complaint) through December 31, 2021.  *Id*. § A, p. 6.  The PAGA Employees will only release PAGA claims that were alleged or could have been alleged by Plaintiff based on the facts alleged in the SAC or in Plaintiff's LWDA letters.  *Id*. § A, p. 4.  The PAGA release period is May 10, 2018 (one year before the date of Plaintiff's first PAGA letter) through December 31, 2021.  *Id*., p. 4.

**7.    The Proposed Class Notice, Notice Plan, and Settlement Administrator Are Sufficient**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all Class Members who would be bound by a proposed settlement."  FED. R. CIV. P. 23(e)(1)(B).  The notice provided to members of a class certified under Rule 23(b)(3) must be the "best notice practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B).  The notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 962-963 (9th Cir. 2009) (quotations omitted).  Reasonable efforts must be made to reach all class members, but it is not required that each class member actually receive notice.  FED. R. CIV. P. 23(c)(2)(B) (requiring "individual notice to all members who can be identified through reasonable effort"); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (under Rule 23, the standard is "best practicable" notice, not "actually received" notice).  Pursuant to the Northern District of California Procedural Guidance for Class Action Settlements, the notice should be easy for the Class Members to understand and should include class counsel's contact information; the address for the settlement administrator's website with links to the settlement motions and other important documents; and information about how to access the case docket and when the final approval hearing will be held.  The notice must also include information about how

-22-

1  to opt out.  FED. R. CIV. P. 23(c)(2)(B).

2      The Class Members and PAGA Employees have already been identified from Defendants'

3  records and the Notice Packet will be mailed to them using the last known mailing address in

4  Defendants' records.  Sett. Agmt. § C.5.  Prior to mailing, the Settlement Administrator will

5  perform a search in the National Change of Address database to update the addresses.  *Id.*  If a

6  notice is returned with a forwarding address, it will be re-mailed to the new address.  *Id.*  If a

7  notice is returned without a forwarding address, the Settlement Administrator will perform a

8  skiptrace search and will re-mail the notice if a new address is found.  *Id.*  There will be a 45-day

9  period to opt out of and object to the settlement, and this deadline will be extended by 10 calendar

10  days for those individuals whose notice is re-mailed.  *Id.*

11      The Notice Packet will describe the nature of the action; the definition of the settlement

12  class; the total settlement amount and the proposed deductions for the payment to the LWDA,

13  class representative service award, attorneys' fees and costs, and settlement administration costs;

14  the scope of the release; the formula for calculating individual settlement payments and PAGA

15  payments and how to challenge the number of workweeks and pay periods used to calculate the

16  payments; how to participate in, object to, and opt out of the Settlement, and the deadlines for

17  doing so; that Class Members may enter an appearance through an attorney if desired; the binding

18  effect of the judgment on Class Members and PAGA Employees; information about when and

19  where the final approval hearing will be held, and how to check if the hearing date has changed;

20  and how to obtain further information about the lawsuit and the Settlement.  Sett. Agmt., **Ex. 1**.

21  The Notice Packet also includes Class Counsel's contact information and the address for the

22  settlement administration website.  *Id.*  The notice will be sent in English only.  The parties are

23  informed and believe that the Class Members and PAGA Employees in this case are proficient in

24  English, so that a translation is not necessary.

25      In order to request exclusion from the Settlement, Class Members only need to fill out the

26  Opt-Out form included in the Notice Packet.  Sett. Agmt., **Ex. 2**.  This form includes a brief

27  statement that the signer is a Class Member, wishes to be excluded from the Settlement, and

28  understands that he or she will receive no money from the Settlement by opting out.  The Class

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-23-

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1   Member will sign and date the form and fill in their mailing address and telephone number so they

2   can be properly identified.  *Id*.  No other information is required.[9]

3           The Notice Packet also states that Class Members and PAGA Employees may file an

4   objection with the Court, and includes instructions and the deadline for doing so.  Sett. Agmt., **Ex.**

5   **1**.  Written objections must state the ground for the objection, and Class Members and PAGA

6   Employees will also be permitted to make oral objections if they appear at the final approval

7   hearing.  Sett. Agmt. § C.5.  The motion for attorneys' fees will be filed 35 days before the opt-out

8   and objection deadline.

9           The CAFA notice requirements apply to this case.  Defendants will provide the required

10  notice within 10 days after this motion is filed and will file a declaration with details about the

11  CAFA notice in support of the motion for final approval.[10]

12  **V.    PROPOSED IMPLEMENTATION SCHEDULE**

13          Plaintiff proposes the following implementation schedule for further proceedings:

| a. | Deadline for Defendants to Submit Class List and Data to Settlement Administrator | **Twenty-one (21) calendar days after the Preliminary Approval Order** |
|---|---|---|
| b. | Deadline for Settlement Administrator to Mail the Notice Packet to Class Members | **Fourteen (14) calendar days after Defendants provide the Settlement Administrator with the Class List and Data** |
| c. | Deadline for Settlement Administrator to Mail Reminder Post-Cards to Class Members | **Not more than thirty (30) calendar days (nor fewer than twenty-five (25) days) after mailing of Notice Packets to Class Members** |
| d. | Deadline for Class Members to Submit Opt-Out Forms or Objections to Settlement | **Forty-five (45) calendar days after mailing of Notice Packets to Class Members** |

---

[9] Plaintiff made the changes to the Notice Packet that the Court directed on April 26, 2022. Bae Decl. ¶¶ 76-88 (providing a breakdown of the changes).

[10] Defendants previously sent a CAFA notice on March 28, 2022 in connection with the motion for preliminary approval of the combined *Del Toro/Foon* settlement.  (Dkt. 84).  A new notice will be provided for the *Del Toro* settlement.

-24-

| e. | Deadline for Class Counsel to file (1) Motion for Final Approval of Class Action Settlement and (2) Motion for Award of Class Representative Enhancement Award, Claims Administrator's Expenses and Attorneys' Fees and Costs | **_____, 2022** |
|----|---|---|
| f. | Hearing on:<br><br>• Motion for Final Approval of Class Action Settlement;<br><br>• Motion for Award of Class Representative Enhancement Award, Settlement Administrator's Expenses and Attorneys' Fees and Costs | **_____, 2023<br>at 10:00 a.m.** |

## VI.    CONCLUSION

The parties have successfully negotiated a settlement of claims that almost certainly would never have been brought, much less successfully so, but for the use of a class action as a procedural device.  The efficient and fair resolution of this case was made possible by the combined efforts of a dedicated and informed Class Representative and experienced Plaintiff's counsel and Defendants' counsel, who were able to realistically assess the costs and risks of continued protracted litigation.  Accordingly, Plaintiff respectfully requests that this Court grant preliminary approval of the proposed settlement, certify the Settlement Class, appoint Plaintiff as the Class Representative, appoint Plaintiff's counsel as Class Counsel, appoint the Settlement Administrator, and approve the Notice Packet and proposed implementation schedule.


Dated:  August 30, 2022                          Respectfully Submitted,

                                                 AEQUITAS LEGAL GROUP
                                                 RIGHETTI GLUGOSKI, P.C.
                                                 NATHAN & ASSOCIATES, APC

                                                      */s/ Ronald H. Bae*
                                                 By: _____
                                                      RONALD H. BAE
                                                      OLIVIA D. SCHARRER
                                                 Attorneys for Plaintiff KRISTI DEL TORO

NOTICE OF UNOPPOSED MOTION & UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106