1  Ronald H. Bae (SBN 186826)
   rbae@AequitasLegalGroup.com
2  Olivia D. Scharrer (SBN 291470)
   oscharrer@AequitasLegalGroup.com
3  Carson M. Turner (SBN 345992)
   cturner@AequitasLegalGroup.com
4  AEQUITAS LEGAL GROUP
   A Professional Law Corporation
5  1156 E. Green Street, Suite 200
   Pasadena, California 91106
6  Telephone:      (213) 674-6080
7  Facsimile:      (213) 674-6081

8
   Attorneys for Plaintiff KRISTI DEL TORO
9  and the Settlement Class

10 (*Additional counsel on the following page*)

11

12              **UNITED STATES DISTRICT COURT**

13      **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

14

15 KRISTI DEL TORO, individually, and on        **Case Number:   4:19-cv-05163-YGR**
   behalf of other members of the general public
16 similarly situated and other aggrieved        [Honorable Yvonne Gonzalez Rogers]
17 employees,

18                                              **PLAINTIFF'S NOTICE OF MOTION
           Plaintiff,                           AND MOTION FOR FINAL APPROVAL
19                                              OF CLASS ACTION SETTLEMENT;
           vs.                                  MEMORANDUM OF POINTS AND
20                                              AUTHORITIES IN SUPPORT THEREOF**

21 CENTENE CORPORATION, a Delaware
   corporation; ENVOLVE PHARMACY             **Hearing Date:    February 28, 2023**
22 SOLUTIONS, INC., a Delaware corporation;   **Time:            2:00 p.m.**
   US SCRIPT LLC (dba US SCRIPT, INC.), a     **Location:        Courtroom 1 – 4th**
23 Delaware limited liability company;                          **Floor**
   CENTENE MANAGEMENT COMPANY,
24 LLC, a Wisconsin limited liability company;
   and DOES 1 through 10, inclusive,
25                                              [Filed concurrently with Declaration of Karen
                                                Hernandez of ILYM Group, Inc. and Proposed
26         Defendants.                          Order]

27
                                                [Complaint filed:   August 19, 2019]
28

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

Matthew Righetti, Esq. State Bar No. 121012
John Glugoski, Esq. State Bar No. 191551
RIGHETTI GLUGOSKI, P.C.
456 Montgomery Street, Suite 1400
San Francisco, CA 94101
Telephone: (415) 983-0900
Facsimile:  (415) 397-9005
Email: matt@righettilaw.com
Email: jglugoski@righettilaw.com


Reuben D. Nathan, Esq. (SBN 208436)
rnathan@nathanlawpractice.com
NATHAN & ASSOCIATES, APC
2901 W. Coast Highway, Suite 200
Newport Beach, California 92663
Telephone: (949) 270-2798
Facsimile:  (949) 209-0303

Attorneys for Plaintiff KRISTI DEL TORO
and the Settlement Class

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on <u>February 28, 2023</u> at <u>2:00 p.m.</u> in <u>Courtroom 1 – 4th</u> <u>floor</u> of the above-captioned court located at 1301 Clay Street, Oakland, CA 94612, Plaintiff KRISTI DEL TORO will, and hereby does, move for an order:

1.    Finding that the notice provided to the Class met the requirements of due process and constituted the best notice practicable; and

2.    Granting final approval of the proposed class action settlement on the ground that the settlement is fair, reasonable and adequate and in the best interest of the Class.

This motion is made on the ground that the settlement is fair, reasonable, and adequate because it is the product of arm's-length, good-faith negotiations after significant litigation, and given the relative strengths and weaknesses of the claims and defenses, compared to the amount offered in settlement, as well as the risk, expense, complexity and likely duration of further litigation, considering the extent of discovery completed and stage of the proceedings, not to mention the experience and view of counsel and reaction of class members, the proposed settlement should receive final approval, which will bring finality to this litigation.

This motion will be based upon: this Notice; the accompanying Memorandum of Points and Authorities; the declaration of Karen Hernandez of ILYM Group, Inc.; the Memorandum of Points and Authorities in support of Plaintiff's motion for attorneys' fees (Dkt. 98); the declarations of Ronald H. Bae, Kristi Del Toro, Reuben Nathan, and Matthew Righetti in support of Plaintiff's motion for attorneys' fees (Dkt. 98-1, 98-2, 98-3, and 98-4); the pleadings and papers on file herein; and upon any other matters that may be presented to the Court at the hearing.

Dated:  January 24, 2023                    Respectfully Submitted,

AEQUITAS LEGAL GROUP

/s/ *Ronald H. Bae*
By: _____
          RONALD H. BAE
          OLIVIA D. SCHARRER
          CARSON TURNER
Attorneys for Plaintiff KRISTI DEL TORO

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .................................. 1

III.   SUMMMARY OF SETTLEMENT TERMS ................................................................ 1

       A.    The Proposed Settlement Class .............................................................. 1

       B.    Relief Provided by the Settlement Agreement ....................................... 2

             1.    Settlement Allocation Formula .................................................. 2

             2.    No Reversion and No Claim Form Required ............................... 2

             3.    Distribution of Uncashed Settlement Checks ............................. 3

             4.    Scope of the Release .................................................................. 3

       C.    Requested Attorneys' Fees and Costs and Proposed Service Payment to the
             Class Representative ............................................................................... 4

       D.    Settlement Claims Administrator ............................................................ 4

IV.    CLAIMS ADMINISTRATION ................................................................................ 4

V.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE
       AND THUS WARRANTS FINAL APPROVAL ........................................................ 7

       A.    Legal Standards Governing Final Approval ............................................ 7

       B.    The Settlement Was Negotiated at Arm's Length by Experienced Counsel
             After Extensive Discovery ...................................................................... 8

       C.    The Settlement Provides Excellent Relief for the Class ......................... 9

       D.    The Settlement Is Non-Reversionary and Checks Will Be Mailed
             Automatically ........................................................................................ 10

       E.    There Is No Unfair Preferential Treatment of Class Members ............. 11

       F.    The Proposed Attorneys' Fee Award is Appropriate ............................ 12

       G.    The Release Is Narrowly Tailored ........................................................ 12

VI.    FINAL CLASS CERTIFICATION OF RULE 23 CLASS FOR SETTLEMENT
       PURPOSES IS APPROPRIATE .............................................................................. 14

       A.    The Settlement Class Is Sufficiently Numerous .................................. 15

B.    There Are Common Issues of Law and Fact ........................................ 15

C.    Plaintiff's Claims Are Typical of the Settlement Class ........................ 16

D.    Plaintiff and Her Counsel Adequately Represent the Settlement Class ................. 17

E.    Certification Is Proper Under Rule 23(b)(3) ........................................ 18

1.    Common Questions Predominate ............................................ 18

2.    A Class Action Is Superior to Many Individual Actions ........................ 19

VII.    CONCLUSION .................................................................................. 20

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1

## **TABLE OF AUTHORITIES**

2

### **Federal Cases**

3  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)......................................................... 19

4  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ............................. 11

5  *Californians for Disability Rts. v. Dep't of Transp.*, 249 F.R.D. 334 (N.D. Cal. 2008) ..... 15

6  *Chu v. Wells Fargo Invs., LLC*, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011).................... 12

7  *Churchill Vill., LLC v. Gen. Elec. Co.*, 361 F.3d 566 (9th Cir. 2004)................................... 4

8  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...................................7, 8

9  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ............................. 15

10  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ............................................................ 4

11  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ........................................................ 16

12  *Gonzalez v. CoreCivic of Tenn., Inc.*, 2018 WL 4388425 (E.D. Cal. Sept. 13, 2018)........ 13

13  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ............................7, 8, 14, 16, 19

14  *Hanon v. Dataproducts Corp.*, 976 F.2d 497(9th Cir. 1992) ............................................. 16

15  *Hendricks v. StarKist Co.*, 2015 WL 4498083 (N.D. Cal. July 23, 2015) ......................... 11

16  *Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010)........................................................ 12

17  *Hubbard v. RCM Techs. (USA), Inc.*, 2021 WL 5016058 (N.D. Cal. Oct. 28, 2021) ......... 13

18  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........................ 9

19  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019)........................ 15, 19

20  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ........................... 17

21  *In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)...................... 11

22  *Jordan v. Cnty. of L.A.*, 669 F.2d 1311 (9th Cir. 1982)........................................................ 15

23  *Leyva v. Medline Indus., Inc.*, 716 F.3d 510 (9th Cir. 2013)............................................... 19

24  *M. Berenson Co. v. Faneuil Hall Marketplace*, 671 F. Supp. 776 (D. Mass. 1987) ............. 8

25  *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)................................. 8

26  *Otey v. Crowdflower, Inc.*, 2014 WL 1477630 (N.D. Cal. Apr. 15, 2014) ......................... 13

27  *Rannis v. Racchia*, 380 Fed. Appx. 646 (9th Cir. 2010) ..................................................... 15

28  *Staton v. Boeing, Co.*, 327 F.3d 938 (9th Cir. 2003) ................................................... 16, 17

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

*Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) ................................................................................................................ 16

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) .................................................... 18

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ...................................... 19

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................................ 15

*Williams v. Boeing Co.*, 517 F.3d 1120 (9th Cir. 2008) ............................................. 12, 13

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ....................... 15

*Wonderly v. Youngblood*, 2022 WL 378262 (E.D. Cal. Feb. 8, 2022)................................ 13

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ......................... 19

**State Cases**

*Arias v. Superior Ct.*, 46 Cal. 4th 969 (2009).............................................................. 3, 11

*Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858 (2021) ........................................ 10

**Other Authorities**

Conte & Newberg, *Newberg on Class Actions* (4th ed., 2002) ............................................ 8

Conte & Newberg, *Newberg on Class Actions* (5th ed., 2011) .......................................... 15

**Rules**

FED. R. CIV. P. 23(a) ................................................................................................... 15, 17

FED. R. CIV. P. 23(c) ..................................................................................................... 4, 5

FED. R. CIV. P. 23(e) ........................................................................................................ 4

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On October 7, 2022, this Court granted preliminary approval of the Joint Stipulation of Class Action Settlement ("Settlement Agreement" or "Settlement") and approved the distribution of the appropriate notices regarding the class action settlement to the Class Members.  The settlement administration has been completed, and Plaintiff moves this Court for final approval of the proposed class action settlement.

The parties have completed the notice process as ordered by the Court.  The notice packet was delivered to 99.8% of the Class Members (only 1 notice packet remained undeliverable after skip trace efforts).  None of the Class Members opted out, and there are no objections to the Settlement.  The Class Members' unanimous approval of the Settlement reflects that the Settlement is an exceptional result for the class.  The average estimated settlement payment is $3,093.85, and the highest estimated payment is $8,194.44.  Approximately 388 Class Members will receive a payment of more than $1,000; 81 will receive more than $5,000, and 18 will receive the highest payment of $8,194.44.  No portion of the settlement will revert to Defendants.

For the reasons set forth herein and in Plaintiff's Motion for Attorneys' Fees (Dkt. 98), Plaintiff respectfully requests this Court to certify the Settlement Class and grant final approval of the proposed settlement.

### II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural history of this case is set forth in Plaintiff's Motion for Attorneys' Fees (Dkt. 98 at 9:27 – 15:27) and the supporting declaration of Ronald H. Bae (Dkt. 98-1 at 3:24 – 15:20).  Pursuant to the Northern District's Procedural Guidelines for Class Action Settlements, the facts and procedural history set forth in the Motion for Attorneys' Fees is incorporated herein by reference.

### III.    SUMMMARY OF SETTLEMENT TERMS

#### A.    The Proposed Settlement Class

The Settlement Class is defined as all California-based employees of Defendants employed from August 19, 2015 through July 15, 2021 ("Class Period"), in the following positions as

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

identified in Centene's Human Resources Information System: (1) all non-exempt employees who were Customer Service Representatives or other non-exempt call center workers; and (2) all non-exempt employees working in Fresno (the "Class Members").  Dkt. 97, **Ex. A** at § D.1 (Settlement Agreement).[1]  The Settlement also includes a group of PAGA aggrieved employees, defined as all employees who fall within the class definition and worked for Defendants in California at any time from May 10, 2018 through July 15, 2021.  Sett. Agmt. § D.1.

### B.    Relief Provided by the Settlement Agreement

The Total Settlement Amount is $2,100,000, which will be used to: compensate Class Members and PAGA Employees; make a $78,750 payment to the LWDA (75% of the $105,000 PAGA allocation); and pay the Settlement Administrator's Expenses, the Class Representative's service payment, and Class Counsel's attorneys' fees and costs.  Sett. Agmt. §§ D.2-D.7.  The employer-side payroll taxes on the wage portion of the settlement will be paid separately and in addition to the Total Settlement Amount.  *Id*. § D.9.

### 1.    Settlement Allocation Formula

The participating Class Members ("Class Participants") will be paid pursuant to an allocation formula based on the number of workweeks they worked for Defendants during the Class Period.  Sett. Agmt. § D.6.  Each Class Member's Individual Settlement Payment will be calculated by dividing the Class Member's Individual Workweeks by the Total Workweeks, and multiplying the resulting ratio by the Net Settlement Amount.  *Id*. § D.6(a)-(b).  For tax purposes, the Individual Settlement Payments will be allocated as follows: 30% as wages, 40% as interest and expense reimbursements, and 30% as penalties.  *Id.* § D.9.

### 2.    No Reversion and No Claim Form Required

This is a non-reversionary settlement.  Sett. Agmt. § D.7.  To make the relief provided by the Settlement as accessible to Class Members as possible, the Parties have agreed to eliminate the claims process.  *Id*. § C.6.  Each Class Member who does not submit a timely and valid opt-out request within 45 days after the Notice Packet is first mailed will be automatically mailed a check for his or her pro rata portion of the Settlement.  *Id*. § C.5.  Pursuant to *Arias v. Superior Court*, 46

---

[1]  All further references to the Settlement Agreement ("Sett. Agmt.") will cite to it directly.

1  Cal. 4th 969 (2009), PAGA Employees cannot opt out of the Settlement.

2  **3.    Distribution of Uncashed Settlement Checks**

3  The Settlement Agreement provides that Class Members shall have one-hundred eighty

4  (180) calendar days from the postmark date of the checks to deposit or otherwise cash their

5  settlement checks. Sett. Agmt. § D.7. As to the funds that remain in the Settlement Fund Account

6  after 180 days due to Class Participants' failure to deposit or cash their settlement checks, those

7  funds will be sent to the State of California's Unclaimed Property Fund in the Class Participants'

8  names. *Id.*

9  **4.    Scope of the Release**

10  Class Participants will release all claims arising from the same set of facts alleged in the

11  Second Amended Complaint ("SAC") or in the LWDA letters, including claims for: failure to

12  provide rest periods and meal periods; failure to pay minimum, regular, and overtime wages;

13  failure to timely pay wages during employment and/or upon termination; unreimbursed business

14  expenses; improperly itemized wage statements; unfair competition; and violations of the Private

15  Attorneys General Act. Sett. Agmt. § A, p. 5 & § D.11.

16  The time period covered by the release is August 19, 2015 through December 31, 2021.

17  *Id.* § A, p. 6. The released parties are defined as:

18  Defendants and any of their former and present parents, subsidiaries,
19  affiliates, insurers, insurance policies, and benefit plans; each of the
   former and present officers, directors, employees, equity holders (partners,
20  shareholders, holders of membership interests, etc.), agents,
   representatives, administrators, fiduciaries, and attorneys of the entities
21  and plans described in this sentence; and any other predecessors,
   successors, transferees, and assigns of each of the persons and entities
22  described in this sentence.

23  *Id.* § A, pp. 5-6.

24  The PAGA Employees will release all claims for PAGA penalties that were alleged or

25  could have been alleged by Plaintiff based on the facts alleged in the SAC or in Plaintiff's LWDA

26  letters. *Id.* § A, p. 4 & § D.12. The PAGA release period is May 10, 2018 through December 31,

27  2021. *Id.*, pp. 4-5.

28  / / /

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

4:19-CV-05163-YGR

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**C.    Requested Attorneys' Fees and Costs and Proposed Service Payment to the Class Representative**

The Settlement Agreement allows Class Counsel to apply for an award of attorneys' fees of 30% of the Total Settlement Amount ($630,000) and litigation costs not to exceed $12,000.  Sett. Agmt. § D.4.  The settlement administration costs will not exceed $15,000.  *Id.* § C.4.  Plaintiff will apply to the Court for a service payment of $10,000 to compensate Plaintiff for her time and service to the class.  *Id.* § D.3.  As set forth in Plaintiff's Motion for Attorneys' Fees, Plaintiff is seeking $630,000 in attorneys' fees, $8,509.03 in litigation costs, $12,697.50 in settlement administration costs, and a $10,000 service payment (Dkt. 98 at 9:3-6); *see also* Hernandez Decl., ¶ 17.  These amounts are justified based for the reasons set forth in the Motion for Attorneys' Fees .

**D.    Settlement Claims Administrator**

This Court approved the retention of ILYM Group, Inc., an experienced and competent class action settlement administrator, as the Settlement Claims Administrator.  Dkt. 97 at 4:16-17.  ILYM has mailed the notice packets and CAFA notices as ordered by the Court.  Hernandez Decl., ¶¶ 3-15.  The Claims Administrator's fees will be paid from the Maximum Settlement Amount.  Sett. Agmt. § D.7.  ILYM's expenses of $12,697.50 are $2,302.50 less than the $15,000 cap.  *See* Hernandez Decl., ¶ 17.

**IV.    CLAIMS ADMINISTRATION**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all Class Members who would be bound by a proposed settlement."  FED. R. CIV. P. 23(e)(1)(B).  The notice provided to members of a class certified under Rule 23(b)(3) must be the "best notice practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B).  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.  *Churchill Vill., LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted).  Notice mailed to each Class Member "who can be identified through reasonable effort" constitutes reasonable notice.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).  For any class certified under Rule 23(b)(3), the notice must inform Class Members "that the court will exclude from the class any member who

-4-

requests exclusion, stating when and how members may elect to be excluded." FED. R. CIV. P. 23(c)(2)(B).

The form and the manner of dissemination of the notice packet sent to the Class Members were consistent with modern best practices set forth by the Federal Judicial Center and negotiated and agreed upon by all counsel. The Notice informed Class Members of the following, among other things:

1. The nature of this action, the identity of Class Counsel, and the essential terms of the Settlement;

2. The allocation of the Settlement fund, including the formula for calculation of settlement shares and the amount of each Class Member's individual share (assuming all Class Members participate), the requests for the Class Representative service payments and the Class Counsel attorneys' fees and costs payment, and the other payments that will be deducted from the Settlement fund;

3. How to participate in the Settlement;

4. How to opt out of the Settlement;

5. How to object to the Settlement;

6. This Court's procedures for final approval of the Settlement; and

7. How to obtain additional information regarding this action and the Settlement.

Hernandez Decl., ¶ 7, **Ex. B**.

The Notice was written in plain English and is organized and formatted so as to be as clear as possible. The Notice encouraged Class Members to contact the Settlement Administrator with any questions, and provided Class Counsel's and the Settlement Administrator's telephone, mail, email, and web contact information. Thus, the notice standard is satisfied.

Plaintiff's counsel and Defendants' counsel worked together to draft the proposed Notice so that it fairly and neutrally apprised the Class Members of their rights and remedies in this action. The parties' proposal to provide notice of the settlement to Class Members entailed mailing the Class Notice, Claim Form and Opt-Out Form to all known and reasonably ascertainable Class Members as follows.

On October 28, 2022, the Settlement Administrator received the class data from

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

Defendants.  Hernandez Decl. ¶ 6.  The class list included 472 individuals.[2]  *Id.*  A National Change of Address database search was performed on each address before the notice packets were mailed.  *Id.* ¶ 7.  On November 15, 2022, the Settlement Administrator mailed the Notice Packet to the Class Members via first-class regular U.S. mail.  *Id.* ¶ 8.  On December 15, 2022, a reminder postcard was mailed to the Class Members.  *Id.* ¶ 9.  A total of 15 notice packets were returned as undeliverable, and 14 were re-mailed to an updated address.  *Id.* at ¶¶ 10-11.  Only one notice packet remained undeliverable.  *Id.* at ¶ 12.

The Notice Packet described the nature of the action; the definition of the settlement class; the total settlement amount and the proposed deductions for the payment to the LWDA, class representative service award, attorneys' fees and costs, and settlement administration costs; the scope of the release; the formula for calculating individual settlement payments and PAGA payments and how to challenge the number of workweeks and pay periods used to calculate the payments; how to participate in, object to, and opt out of the Settlement, and the deadlines for doing so; that Class Members may enter an appearance through an attorney if desired; the binding effect of the judgment on Class Members and PAGA Employees; information about when and where the final approval hearing will be held, and how to check if the hearing date has changed; and how to obtain further information about the lawsuit and the Settlement.  Sett. Agmt., Ex. 1. There was a 45-day period to opt out of and object to the settlement, and this deadline was extended by 10 calendar days for those individuals whose notice was re-mailed.  The Notice Packet also included Class Counsel's contact information and the address for the settlement administration website.  *Id.*  The notice was sent in English and Spanish.  Hernandez Decl. ¶ 8, **Ex. B**.

In order to request exclusion from the Settlement, Class Members only needed to fill out the Opt-Out form included in the Notice Packet.  Hernandez Decl. ¶ 8, **Ex. B** (p. 26).  This form included a brief statement that the signer is a Class Member, wishes to be excluded from the Settlement, and understands that he or she will receive no money from the Settlement by opting

---

[2] At preliminary approval, Defendants estimated the class size at 475 employees.  Dkt. 93 at 25:7-10, n.8.  The final total is 472 employees.

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1    out.  The Class Member signed and dated the form and filled in their mailing address and

2    telephone number so they could be properly identified.  *Id.*  No other information was required.

3         The Notice Packet also stated that Class Members and PAGA Employees may file an

4    objection with the Court, and included instructions and the deadline for doing so.  Hernandez

5    Decl. ¶ 8, **Ex. B**.  Written objections must have stated the ground for the objection, and Class

6    Members and PAGA Employees were also permitted to make oral objections if they appeared at

7    the final approval hearing.  Sett. Agmt. § C.5.  Per the Northern District's Procedural Guidance for

8    Class Action Settlements, the motion for attorneys' fees was filed 35 days before the opt-out and

9    objection deadline.

10        The CAFA notice requirements applied to this case.  Defendants provided CAFA Notices

11   and exhibits to the Settlement Administrator, which the Settlement Administrator sent to the U.S.

12   Attorney General and the Offices of the Attorney Generals of the following states: California,

13   Arizona, Florida, Illinois, Oregon, and Texas.  Hernandez Decl. ¶ 4, **Ex. A**.  The notices were

14   mailed on September 7, 2022.  *Id.*

15        The above-described notice procedure followed by the Settlement Administrator was

16   preliminarily approved by this Court and was dutifully followed by the Settlement Administrator

17   and the parties.  The result of the settlement administration is as follows:  Of the 472 Class

18   Members, there were 472 Participating Claimants, which constitutes 100% of the Class.

19   Hernandez Decl. ¶ 15.  The average award amount is $3,093.85.  *Id.* at ¶ 16.  The maximum award

20   amount is $8,194.44.  *Id.*  There were no requests for exclusion, and no Class Members objected

21   to the settlement.  *Id.* at ¶¶ 13-14.

22   **V.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE**

23   **       AND THUS WARRANTS FINAL APPROVAL**

24        **A.    Legal Standards Governing Final Approval**

25        "Federal Rule of Civil Procedure 23(e) requires the district court to determine whether a

26   proposed settlement is fundamentally fair, adequate, and reasonable."  *Hanlon v. Chrysler Corp.,*

27   150 F.3d 1011, 1026 (9th Cir. 1998) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276

28   (9th Cir. 1992)).  This determination requires a balancing of several factors, such as: the "strength

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Id*. A proposed class action settlement is presumed to be fair if the parties reached the settlement after arms' length negotiations, investigation and discovery were sufficient to allow counsel and the court to act intelligently, counsel is experienced in similar litigation, and the percentage of objector is small. Conte & Newberg, *Newberg on Class Actions* § 11.41 (4th ed., 2002).

Finally, in evaluating class action settlements, the Court should also be guided by the "strong judicial policy' that favors the settlement of class actions." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The Ninth Circuit teaches that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not be turned into a trial or rehearsal for trial on the merits." *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Hanlon*, 150 F.3d at 1027 (a settlement is a "private consensual decision of the parties" and the approval analysis is limited to considering whether the settlement is a product of collusion and is fair as a whole).

**B.     The Settlement Was Negotiated at Arm's Length by Experienced Counsel After Extensive Discovery**

Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements. *M. Berenson Co. v. Faneuil Hall Marketplace*, 671 F. Supp. 776, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is presumptively fair").

The Settlement is the product of protracted mediation and arm's-length negotiation conducted with the assistance of an experienced mediator Jay C. Gandhi who is a retired federal magistrate. Class Counsel advocated vigorously on behalf of the Class throughout the negotiations in order to negotiate a settlement that is in the best interest of the Class Members and provides adequate class-wide relief. Bae Decl. in support of Mtn. for Atty. Fees (Dkt. 98-1, ¶¶ 39-

44).  The vigorous negotiations between the Parties resulted in a reasonable compromise that is the product of genuine give and take justified by the facts of this case.  The mediation took place after approximately two years of discovery, motion practice, and analysis and research of the issues likely to be raised at class certification and the merits stage of the litigation.  Following the mediation, the parties spent several months negotiating the terms of the Memorandum of Understanding and the Joint Stipulation of Settlement.  Plaintiff is represented by highly experienced class action litigators who believe that the Settlement is an excellent result for the Class Members.

Further, there are no "subtle signs of collusion." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  The settlement is non-reversionary.  The Settlement provides for an attorneys' fee award of up to 30% of the Total Settlement Amount, which is higher than the Ninth Circuit benchmark of 25%, but the Settlement is an outstanding result for the Class and thus the a slight upward adjustment is warranted.  Dkt. 98 at 19:20 – 30:3.  Similarly, the request for Plaintiff's enhancement award is supported by evidence of the work she has done and the risk she has undertaken, which is especially high because Plaintiff is a current employee.  Del Toro Decl. in support of Mtn. for Atty. Fees (Dkt. 98-2, ¶¶ 2-13).

**C.    The Settlement Provides Excellent Relief for the Class**

The Settlement provides a significant monetary relief to the Class Members to compensate them for the alleged wage-and-hour violations at issue in this case.  Class Counsel estimates the Total Settlement Amount to represent approximately 33.4% of Defendants' estimated realistic exposure, which is well within the range of possible approval.  Bae Decl. in support of Mtn. for Atty. Fees (Dkt. 98-1, ¶¶ 45-60).  The Class Members will receive automatic payments which are estimated to be $3,093.85 on average, and the highest payments will be approximately $8,194.44.  Hernandez Decl. ¶ 16.  Further, 5% of the Total Settlement Amount ($105,000) was allocated to the PAGA claim.  Sett. Agmt. § D.5.  As required by statute, 75% ($78,750) will be paid to the LWDA.  The remaining 25% ($26,250) will be distributed to approximately 425 PAGA Employees.  Thus, the PAGA payments are estimated to be approximately $61.76 on average ($26,250 ÷ 425).

**NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**4:19-CV-05163-YGR**

This represents an excellent recovery for the Class Members, particularly considering the risks of further litigation. There is no guarantee that Plaintiff could certify the off-the-clock claim or prevail on the merits. To the extent the claim applies to call center employees, Plaintiff could potentially compare employees' time records against data showing when they logged into and out of the phone system to determine how much unpaid time may have occurred during the process of clocking in and out. There is a chance that the amounts of time could be small and/or infrequent. To the extent Plaintiff alleged that employees were required or pressured to work off the clock to complete their work, this would likely be difficult to prove. Plaintiff believes that the claim for failure to factor non-discretionary bonuses into the overtime rate was strong, but the amount of unpaid wages would be low. Also, the facts supporting this claim could also provide a strong foundation for a claim that the bonuses should be factored into the meal break premium rate. *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858 (2021). With regard to the meal and rest breaks, the written policies appeared to be compliant, which would make certification significantly more challenging. The pay data indicates that meal break premiums were sometimes paid, although it appears that no rest break premiums were paid. Plaintiff believes that the claims for waiting time penalties, wage statement penalties, and PAGA penalties are strong to the extent they are derivative of the bonus/regular rate claim, but Defendants could succeed in arguing that they acted in good faith and not willfully.

Moreover, litigating the case through certification, summary judgment, and trial would have been expensive and time-consuming, with the risk that Plaintiff could lose at each step of the way and recover nothing, barring a successful appeal. For these reasons, the settlement value is fair, reasonable, and adequate.

**D.      The Settlement Is Non-Reversionary and Checks Will Be Mailed Automatically**

This is a non-reversionary settlement. Sett. Agmt. § D.7. To make the relief provided by the Settlement as accessible to Class Members as possible, the Parties have agreed to eliminate the claims process. *Id.* § C.6. Each Class Member who does not submit a timely and valid opt-out request within 45 days after the Notice Packet is first mailed will be automatically mailed a check for his or her pro rata portion of the Settlement. *Id.* § C.5. Pursuant to *Arias v. Superior Court*, 46

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-10-

Cal. 4th 969 (2009), PAGA Employees cannot opt out of the Settlement.  No part of the settlement will revert to Defendants.

**E.    There Is No Unfair Preferential Treatment of Class Members**

To the extent possible, a class action settlement "should provide class members who suffered greater harm and who have stronger claims a larger share of the distributable settlement amount."  *Hendricks v. StarKist Co.*, 2015 WL 4498083 at *7 (N.D. Cal. July 23, 2015).  A distribution plan can be fair and reasonable if it awards a pro rata share to every participating class member.  *In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171 at *12 (N.D. Cal. Oct. 27, 2015).  An allocation formula "need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel."  *Id.* (citation omitted).

The Settlement does not give preferential treatment to any Class Members.  The settlement provides for the funds to be allocated to each participating Class Member proportionally based on the number of weeks they worked for Defendants, as shown by Defendants' records.  Sett. Agmt. § D.6.  The settlement class is cohesive because it consists of non-exempt Customer Service Representatives and other non-exempt call center workers.  The vast majority of the "other non-exempt call center workers" performed similar work as Customer Service Representatives. Examples of job titles for these positions include Member Connections Representative and Pharmacy Credentialing and Contract Representative.  Employees in these positions handled calls with patients and providers regarding pharmacy benefits, but had more specialized roles than Customer Service Representatives.  A small number of employees provided services needed to run the call center, such as receptionists, data analysts, and auditors who reviewed claims to make sure they were adjudicated correctly.  These employees were all subject to the same relevant wage-and-hour policies as Customer Service Representatives, including policies regarding work schedules and hours worked, overtime, incentive bonus plans, timekeeping, and meal and rest breaks.

As set forth in the Motion for Attorneys' Fees (Dkt. 98 at 18:18 – 19:17), the proposed incentive award to Plaintiff is within the range approved by courts in this district.  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-267 (N.D. Cal. 2015) (noting that incentive awards compensate wage-and-hour plaintiffs for a "significant reputational risk" and higher awards are

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

appropriate when the average class member payment is high); *Chu v. Wells Fargo Invs., LLC*, 2011 WL 672645 at *5 (N.D. Cal. Feb. 16, 2011) (awarding $10,000 each to two plaintiffs in a $1,725,000 settlement).  The requested award also accounts for the risk that Plaintiff took on by filing this lawsuit while continuing to work for Defendants.

### F.    The Proposed Attorneys' Fee Award is Appropriate

For the reasons set forth in Plaintiff's Motion for Attorneys' Fees, the requests for attorneys' fees in the amount of $630,000 (30% of the settlement amount), actual litigation costs of $8,509.03, and class representative service payment of $10,000 are appropriate and should be approved.  Dkt. 98.

### G.    The Release Is Narrowly Tailored

As set forth above in Section III.B.4, the release is tailored to track the definition of the settlement class and the PAGA group.  The Class Members will release all claims arising from the same set of facts alleged in the operative SAC and in Plaintiff's LWDA letters.  Sett. Agmt. § A, p. 5 & § D.11.  The release period for class claims is from August 19, 2015 (four years prior to the date of filing of the complaint) through December 31, 2021.  *Id.* § A, p. 6.  The PAGA Employees will only release PAGA claims that were alleged or could have been alleged by Plaintiff based on the facts alleged in the SAC or in Plaintiff's LWDA letters.  *Id.* § A, p. 4.  The PAGA release period is May 10, 2018 (one year before the date of Plaintiff's first PAGA letter) through December 31, 2021.  *Id.*, p. 4.

In the Ninth Circuit, a settlement agreement may release claims "based on the identical factual predicate as that underlying the claims in the settled class action."  *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (citing *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008)).  The release in this case is limited to claims arising from the facts pled in Plaintiff's operative complaint and PAGA letter.  Thus, the release is narrowly tailored and is not overbroad.

The release period is also appropriately tailored.  The Ninth Circuit's rules regarding the scope of the release are designed to ensure that the class members do not release claims unrelated to the settled case.  There is no strict limit on the release period, provided that the release tracks the facts alleged in the case.  *See Hesse*, 598 F.3d at 590 (a settlement may properly bar a party

-12-

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

from bringing related claims in the future, "even though the claim was not presented and might not have been presentable in the class action," provided that the claims are "based on the identical factual predicate as that underlying the claims in the settled class action."); *Williams*, 517 F.3d at 1134 (a release is only enforceable when it "depend[s] upon the same set of facts" alleged in the class action complaint); *Otey v. Crowdflower, Inc.*, 2014 WL 1477630 at *7 (N.D. Cal. Apr. 15, 2014) (refusing to approve a release that included "any and all wage-related claims" because it went beyond the scope of the litigation). The purpose of this requirement is to prevent the parties from settling unrelated claims that the plaintiff did not allege, did not litigate, and did not believe had any value. *See Gonzalez v. CoreCivic of Tenn., Inc.*, 2018 WL 4388425 at *12 (E.D. Cal. Sept. 13, 2018). When the release is limited to claims arising out of the facts alleged in the case, courts routinely approve releases that extend through the date of preliminary or final approval. *See, e.g.*, *Wonderly v. Youngblood*, 2022 WL 378262 at *9 (E.D. Cal. Feb. 8, 2022) (approving an FLSA release that covered the time period "between October 26, 2015, and Court approval"); *Hubbard v. RCM Techs. (USA), Inc.*, 2021 WL 5016058 at *7, *17 (N.D. Cal. Oct. 28, 2021) (granting final approval of a class action settlement release that "release does not include or cover any actions or omissions occurring after the Settlement Period," with the "Settlement Period" defined as "October 4, 2015 through the date of Preliminary Approval of Settlement.").

Here, the SAC defines the proposed class as "[a]ll non-exempt employees who have been employed by Defendants in the State of California *within four years prior to the filing of the original complaint in this action until the date of certification of the class in this lawsuit*." Dkt. 92 at 5:2-6 (¶ 15) (italics added). The original complaint was filed on August 19, 2019. Dkt. 1. The release period starts on August 15, 2019, which exactly tracks the language in the SAC. If the end date of the release period were to track the SAC, the release would have extended through the date of final approval. Dkt. 82 at 7:20-21. The parties agreed to shorten the release date to December 31, 2021 because of the escalator provision in the Settlement Agreement and the changes made when the *Del Toro* and *Foon* settlements were separated.

Originally, when the settlements were combined, the parties intended the class period to run through preliminary approval, and the release period to run through final approval. Dkt. 82 at

7:9-25. The escalator clause provided that the settlement amount would be increased or the class period would be shortened if the class workweeks was 10% or more above the estimated 60,000 workweeks (i.e., 66,000). Dkt. 82 at 7:9-15. Approximately 45,000 of the estimated 60,000 workweeks were worked by the *Del Toro* class members. Dkt. 73 at 26:8-9. In April 2022, Defendants opted to shorten the class period to end on September 30, 2021 because the class members worked 65,997 workweeks as of that date. Dkt. 82 at 7:14-17. Because the class period was shortened, Defendants also agreed to shorten the release period so it ended on December 31, 2021. Dkt. 82 at 7:18-25.

When the *Del Toro* and *Foon* settlements were separated, the parties re-negotiated the escalator clause and the class period. Dkt. 97, **Ex. A** (Sett. Agmt. at 12:8 and § D.13). Defendants estimated that the *Del Toro* class members worked 51,535 workweeks as of July 15, 2021. Therefore, the cutoff date of the class period became July 15, 2021, and the escalator provision would kick in if the workweeks were 10% more than 51,535. *Id.* The parties agreed that the release period would end on December 31, 2021 instead of final approval since the class period was shortened. The parties believe this is a fair compromise, since the release is limited to the facts alleged in the operative complaint and the class period and release period are shorter than contemplated in the operative complaint.

## VI.    FINAL CLASS CERTIFICATION OF RULE 23 CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court should provide final approval of the preliminarily-approved finding that the proposed settlement class is appropriate for settlement purposes. The Court can certify a settlement class where the Court has determined that the proposed class and proposed class representative meet the four prerequisites of Rule 23(a) (namely numerosity, commonality, typicality and adequacy) and one of the three requirements of Rule 23(b). *See Hanlon*, 150 F.3d at 1019. Plaintiff seeks certification under Rule 23(b)(3), which requires that common questions of law or fact predominate over individual questions and that class treatment is a superior method of resolving the controversy.

/ / /

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

The criteria for class certification "are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-557 (9th Cir. 2019) (en banc). In a litigation class, manageability is an important factor, but it plays no role in a settlement class because there will be no trial. *Id.* Similarly, the predominance requirement is "readily met." *Id.* at 559. However, the class definition receives heightened attention in a settlement class. *Id.* at 557. This requirement is designed to protect the interests of absentees by ensuring that the class definition is not unwarranted or overbroad. *Id.*

### A.    The Settlement Class Is Sufficiently Numerous

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). This requirement is satisfied when there are as few as 40 class members. *Rannis v. Racchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010). Here, the settlement class includes 472 employees. Hernandez Decl., ¶¶ 6, 14-15. Thus, the numerosity requirement is easily met. *Jordan v. Cnty. of L.A.*, 669 F.2d 1311, 1319-20 (9th Cir. 1982), *rev'd on other grounds*, 713 F.2d 503 (9th Cir. 1983) (as few as 39 class members sufficient for numerosity); Conte & Newberg, *Newberg on Class Actions* § 3:12 (5th ed., 2011) ("a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone"); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members").

### B.    There Are Common Issues of Law and Fact

This requirement is construed permissively and is satisfied when there are shared legal issues with divergent factual predicates, or when there is a common core of facts coupled with disparate legal issues. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). Even "a single common question" is sufficient if the "determination of its truth or falsity will resolve an issue that is central to the validity of [the class claims] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *see also Californians for Disability Rts. v. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008) (citing *Wal-mart*, 509 F.3d at 1177 ("The existence of even one significant issue common to the class is sufficient to warrant certification.")).

**A E Q U I T A S   L E G A L   G R O U P**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-15-

1    Here, the common questions include whether Plaintiff and the class members (1) received

2    non-discretionary bonuses that Defendants failed to factor into the overtime rate of pay; (2) were

3    suffered and/or permitted to work time for which they were not compensated; (3) were provided

4    with a duty-free meal break of at least 30 minutes for every 5 hours of work; (4) were provided

5    with a duty-free rest break of at least 10 minutes for every 4 hours of work or major fraction

6    thereof; (5) were paid all wages due upon separation of employment; and (6) were provided with

7    accurate, itemized wage statements. These questions are based on alleged policies and practices

8    that apply to the entire class and discrete subclasses. This is sufficient to satisfy the commonality

9    requirement for settlement purposes. *See Stonehocker v. Kindred Healthcare Operating LLC*,

10    2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) (granting final approval of a settlement involving

11    allegations of off-the-clock work and failure to provide meal and rest breaks).

12    **C.    Plaintiff's Claims Are Typical of the Settlement Class**

13    The Ninth Circuit explained that "[u]nder the rule's permissive standards, representative

14    claims are 'typical' if they are reasonably coextensive with those of absent class members; they

15    need not be substantially identical." *Staton v. Boeing, Co.*, 327 F.3d 938, 957 (9th Cir. 2003)

16    (citing *Hanlon*, 150 F.3d at 1020). It is sufficient that the class representative is "part of the class

17    and possess[es] the same interest and suffer[s] the same injury as the class members." *Gen. Tel.*

18    *Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982). This prong merely requires that the "other

19    members have the same or similar injury, whether the action is based on conduct which is not

20    unique to the named plaintiffs, and whether other class members have been injured by the same

21    course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

22    Plaintiff is a current Customer Service Representative who performs the same work and is

23    subject to the same wage-and-hour policies and practices and the same working conditions as the

24    Class Members. *See* Del Toro Decl. in support of Mtn. for Atty. Fees (Dkt. 98-2, ¶ 2); Bae Decl.

25    in support of Mtn. for Atty. Fees (Dkt. 98-1, ¶¶ 46-58). Plaintiff's and the Class Members'

26    primary job duties are to answer and place calls regarding pharmacy benefits (e.g., whether a

27    prescribed medication is covered by a patient's insurance plan). Plaintiff and approximately 168

28    other Class Members worked at the call center located in Fresno, California. The other Class

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-16-

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1   Members worked at call centers located in Huntington Beach, Rancho Cordova, Sacramento, and

2   Woodland Hills, California.  Employees performed substantially the same work at all of the call

3   centers and were subject to the same wage-and-hour policies, including policies regarding work

4   schedules and hours worked, overtime, incentive bonus plans, timekeeping, and meal and rest

5   breaks.  Thus, Plaintiff's work experience was similar to that of the class members, and they

6   experienced the same alleged injury.

7          **D.      Plaintiff and Her Counsel Adequately Represent the Settlement Class**

8          A representative plaintiff must be able to "fairly and adequately protect the interests of the

9   class." FED. R. CIV. P. 23(a)(4).  Adequacy of representation is established where the plaintiff's

10  interests are not antagonistic to those of the class and the plaintiff is represented by competent

11  counsel.  *Staton v. Boeing,* 327 F.3d at 957.  In other words, adequacy exists when the plaintiff

12  and their counsel do not have any conflict of interest with the class members, and have prosecuted

13  the action vigorously on behalf of the class.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d

14  934, 943 (9th Cir. 2015).

15         Plaintiff has no conflict of interest with the class members.  She performed the same work

16  and was subject to the same policies and practices as the Class Members.  Plaintiff's claims are

17  identical to the claims of the other class members and arise from the same course of conduct by

18  Defendants.  Plaintiff has embraced her responsibilities as the class representative by actively

19  participating in this case, providing documents, identifying potential witnesses, providing valuable

20  information regarding the policies and practices at issue in this case and Defendants' business

21  structure, engaging in the settlement process, and consulting with counsel throughout the

22  litigation.  Del Toro Decl. in support of Mtn. for Atty. Fees (Dkt. 98-2, ¶¶ 2, 4-6); Bae Decl. in

23  support of Mtn. for Atty. Fees (Dkt. 98-1, ¶¶ 78-80,).  Plaintiff has devoted considerable time to

24  this litigation, demonstrating her commitment to achieving the best possible result for the class.

25  Del Toro Decl. in support of Mtn. for Atty. Fees (Dkt. 98-2, ¶¶ 2, 4-6).  Further, as the Court

26  recognized in the preliminary approval order, Plaintiff is represented by qualified and competent

27  counsel who have the experience and resources necessary to vigorously pursue this action.  Bae

28  Decl. in support of Mtn. for Atty. Fees (Dkt. 98-1, ¶¶ 68-74); Nathan Decl. in support of Mtn. for

-17-

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

Atty. Fees (Dkt. 98-3, ¶¶ 22-23); Righetti Decl. in support of Mtn. for Prelm. Appr. (Dkt. 93-3, ¶¶ 1-5). The firms representing Plaintiff have certified many class actions in state and federal court, for both litigation and settlement purposes, and have recovered many millions of dollars on behalf of class members.

### E. Certification Is Proper Under Rule 23(b)(3)

#### 1. Common Questions Predominate

Plaintiff seeks certification under Rule 23(b)(3), which requires a showing that common questions of law and fact predominate over individualized issues. This inquiry tests whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted). An individual question is defined as "one where members of a proposed class will need to present evidence that varies from member to member." *Id*. A common question, on the other hand, is "one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id*.

The predominance requirement is satisfied for settlement purposes because Plaintiff challenges the legality of policies and practices that can be decided with common proof and will generate an answer common to the entire class. The common questions include (1) whether the bonuses paid to Plaintiff and the class members are non-discretionary; (2) if yes, whether the bonuses were properly factored into the overtime rate; (3) whether the process of logging in and out of the phone and timekeeping systems caused employees to work unpaid compensable time at the beginning and/or end of their shifts; (4) whether employees were denied compliant meal and rest breaks because of Defendants' productivity rules/guidelines, such as requiring employees to strictly adhere to a schedule and be available to answer calls for a certain percentage of their shift; (5) whether Defendants paid meal and rest break premiums when required; and (6) whether employees' wage statements were non-compliant in light of the alleged failure to pay wages and provide meal and rest breaks.

If the case were to be litigated, the common proof that would include, among other things, employee handbooks, standalone policy documents, performance reviews that reflect productivity

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1  rules, and Plaintiff's and the class members' time and payroll records, as well as documents

2  reflecting when call center employees logged into and out of their phones. The class members

3  would have to individually prove their damages, but "damage calculations alone cannot defeat

4  certification." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010);

5  *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) ("damages determinations are

6  individual in nearly all wage-and-hour class actions").

7  **2.    A Class Action Is Superior to Many Individual Actions**

8  Rule 23(b)(3) "requires that class resolution must be 'superior to other available methods

9  for the fair and efficient adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1023. This

10  requirement is met when "classwide litigation of common issues will reduce litigation costs and

11  promote greater efficiency" or when "no reasonable alternative exists." *Valentino v. Carter-*

12  *Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996); *Amchem Prods., Inc. v. Windsor*, 521 U.S.

13  591, 615 (1997) (the predominance requirement was added "to cover cases 'in which a class action

14  would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as

15  to persons similarly situated, without sacrificing procedural fairness or bringing about other

16  undesirable results."). Manageability is "not a concern in certifying a settlement class where, by

17  definition, there will be no trial." *In re Hyundai*, 926 F.3d at 556-57 (so stating and noting that the

18  court instead must give heightened attention to the class definition).

19  In the instant case, the alternative method to a class action would be individual lawsuits by

20  the 472 class members. Because the individual amounts in controversy are relatively small, most

21  class members would not have the resources or financial incentive to pursue an individual claim.

22  *Levya v. Medline Indus. Inc.*, 716 F.3d at 515 (finding that "[i]n light of the small size of the

23  putative class members' potential individual monetary recovery, class certification may be the only

24  feasible means for them to adjudicate their claims."). Furthermore, class treatment alleviates the

25  heavy burden on the Court of adjudicating individual lawsuits. The Settlement also eliminates the

26  risk of duplicative lawsuits and ensures that the class members' claims are resolved in an efficient

27  and cost-effective manner.

28  Although Defendants disagree that the proposed class would satisfy the requirements for a

1    litigated class action, Defendants do not object to certification of the class for purposes of this

2    settlement.  Sett. Agmt. § C.3.

3    **VII.    CONCLUSION**

4         For the foregoing reasons, and for the reasons set forth in Plaintiff's Motion for Attorneys'

5    Fees, Plaintiff respectfully requests this Court to grant final approval of the proposed settlement.

6

7    Dated:  January 24, 2023                    Respectfully Submitted,

8                                               AEQUITAS LEGAL GROUP
9                                               RIGHETTI GLUGOSKI, P.C.
                                                NATHAN & ASSOCIATES, APC
10

11                                                   */s/  Ronald H. Bae*
                                               By:_____
12                                                   RONALD H. BAE
                                                     OLIVIA D. SCHARRER
13                                                   CARSON TURNER
                                               Attorneys for Plaintiff KRISTI DEL TORO and the
14                                             Settlement Class

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106